715 S.E.2d 383

**WHITE OAK MANOR, INC. and White Oak Manor–York, Inc.,**

**v.**

**LEXINGTON INSURANCE COMPANY, Caronia Corporation, and Certain Underwriters at Lloyd's London, subscribing to Certificate No. UP02US382030, Defendants,**

**of whom Lexington Insurance Company is the Appellant.**

No. 4863.

Court of Appeals of South Carolina.

Submitted Nov. 1, 2010.

Decided Aug. 10, 2011.

Rehearing Denied Sept. 22, 2011.

376

Peter H. Dworjanyn, Christian Stegmaier, and Amy L. Neuschafer, all of Columbia, for Appellant.

Joshua Matthew Henderson, of Spartanburg, for Respondents.

THOMAS, J.

Respondent White Oak Manor, Inc. (White Oak) owns and operates a nursing home in York County. In 2005, White Oak filed a declaratory judgment action against its insurer, Appellant Lexington Insurance Company (Lexington), to adjudicate the contractual obligations between the two. Lexington did not answer within thirty days and was declared to be in default. The trial court denied Lexington's motion to set aside the entry of default, and Lexington appeals. We reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

Lexington is a corporation licensed to do business in South Carolina and organized and existing under the laws of the State of Delaware. In 2001, Lexington issued an insurance policy to White Oak, providing coverage from September 30, 2001, until May 13, 2002. From May 13, 2002, until March 31, 2003, there was a gap in coverage with Lexington, during which White Oak was insured by another carrier. Lexington resumed coverage from March 31, 2003, until March 31, 2004.

On November 3, 2001, a White Oak resident sustained an injury from the improper application of a feeding tube by a White Oak employee. On January 10, 2002, White Oak notified Caronia Corporation (Caronia), the third-party administrator approved by Lexington to receive notice, of the incident. On March 27, 2003, a malpractice lawsuit on behalf of the injured resident was filed against White Oak.

A mediation in the malpractice action was planned for August 2004. In anticipation of this mediation, counsel for White Oak sent a letter to Lexington's attorneys informing them of the scheduled mediation. In response, on August 5, 2004, Lexington's counsel sent a letter to White Oak's counsel asking whether White Oak was seeking coverage, the date and form of the first demand against White Oak, and the date and

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

form of any notice White Oak sent to any other insurers. During the following two months, attorneys for White Oak had two conversations with counsel for Lexington regarding this letter.

In December of 2004, counsel for Lexington again sent a letter to White Oak's attorneys discussing coverage issues. White Oak replied, and subsequently White Oak and Lexington had a telephone conversation regarding notice to Caronia of the claim against White Oak. White Oak later settled the malpractice action.

On April 22, 2005, White Oak instituted the current action. The policy in question contains a "service of suit clause" that reads: "It is further agreed that service of process in such a suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 200 State Street, Boston, Massachusetts 02109 or his or her representative."

On May 16, 2005, White Oak mailed the summons and complaint, return receipt requested, with delivery restricted to the addressee, to "Lexington Insurance Company, 200 State St., Boston, MA 02109, ATTN: LEGAL DEPARTMENT." The return receipt was dated May 20, 2005. The signature on the return receipt appeared to be from an individual unknown to Lexington. According to Lexington's internal mail log, however, the pleadings were received on May 20, 2005, and personally delivered to Lexington's claim counselor on May 27, 2005; however, according to Lexington, neither the claim counselor nor the individual to whom the claim counselor was to pass such information recalled receiving the pleadings.

On July 7, 2005, White Oak filed an affidavit of default. In an order dated July 15, 2005, the trial court held Lexington in default. On August 11, 2005, White Oak filed a notice of motion and motion for damages pursuant to Rule 55(b), SCRCP. On September 14, 2005, White Oak filed an amended complaint substituting certain defendants who are not parties to this appeal, which it served on Lexington by mail the same day. Attached as an exhibit to this amended complaint was the order of default. Lexington answered the amended complaint on September 26, 2005, and contemporaneously filed a motion to set aside the entry of default

pursuant to Rule 55(c), SCRCP.[2] The trial court denied the motion and Lexington's subsequent motion to alter or amend.

On November 17, 2008, the trial court held a hearing on White Oak's motion for damages. On November 21, 2008, the court filed an order in which it awarded White Oak judgment against Lexington in the amount of $153,266. Lexington then filed this appeal.

## STANDARD OF REVIEW

■■■■ "The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge." *Sundown Operating Co. v. Intedge Indus.*, 383 S.C. 601, 606, 681 S.E.2d 885, 888 (2009). "The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion." *Id.* "An abuse of discretion occurs when the judge issuing the order was controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support." *Id.* at 607, 681 S.E.2d at 888.

## LAW/ANALYSIS

■■■■ Lexington argues that the South Carolina Code provides for the exclusive method of service upon a foreign insurance company and that White Oak was therefore required to serve notice pursuant to statute regardless of the service of suit clause. We agree.

Section 38–5–70 of the South Carolina Code (2002) provides in pertinent part as follows:

Every insurer shall, before being licensed, appoint in writing the director and his successors in office to be its

---

2. In its motion to set aside the default, Lexington did not expressly argue that because it filed an answer to the amended complaint only twelve days after the filing of the amended complaint, it was never actually in default. Moreover, in both its motion to alter or amend and its brief to this court, Lexington does not argue that it timely responded to the filing and service of the amended complaint. *See* Rule 15(a), SCRCP ("A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fifteen days after service of the named amended pleading, whichever period may be the longer, unless the court otherwise orders.").

true and lawful attorney upon whom all legal process in any action or proceeding against it must be served and in this writing shall agree that any lawful process against it which is served upon this attorney is of the same legal force and validity as if served upon the insurer and that the authority continues in force so long as any liability remains outstanding in the State.

In addition, the legislature has imposed the following requirement regarding service on insurance companies:

The summons and any other legal process in any action or proceeding against it *must be served on an insurance company . . . by delivering two copies of the summons or any other legal process to the Director of the Department of Insurance,* as attorney of the company. . . . A company shall appoint the director as its attorney pursuant to the provisions of section 38–5–70. This service is considered sufficient service upon the company.

S.C.Code Ann. § 15–9–270 (2005) (emphasis added).

In response to Lexington's argument that valid service requires delivery of copies of the summons and complaint to the Director of the Department of Insurance, the trial court held that the parties were free to agree to another form of service and that Lexington, through the inclusion of the service of suit clause in its policy, waived its right to insist on service pursuant to section 15–9–270. We hold this ruling was based on an error of law.

According to section 15–9–270, the service of pleadings in a lawsuit against an insurance company "must" be accomplished by delivering two copies of the pleadings to the Director of the South Carolina Department of Insurance. *See Equilease Corp. v. Weathers,* 275 S.C. 478, 484, 272 S.E.2d 789, 792 (1980) ("Clearly, in such a case where jurisdiction has not yet been acquired over an insurance company, service under the applicable substituted service statute is the proper and exclusive method of obtaining jurisdiction over the insurance company."). Whereas statutes prescribing methods of service on other legal entities include a proviso that the prescribed manner of service is not the only means or even the required means of service, section 15–9–270 does not allow service to be

accomplished by other methods.[3] The absence in section 15–9–270 of a provision allowing alternate methods of service on insurers is consistent with the Supreme Court's interpretation of what is now section 38–5–70. *See Murray v. Sovereign Camp, WOW*, 192 S.C. 101, 108, 5 S.E.2d 560, 562 (1939) (holding that "service on foreign insurance companies as provided for in Section 7964 of the Code of 1932 [now section 38–5–70] is exclusive, and that service made in any other way upon such corporations is invalid").

■ Service of the pleadings on the Director of the South Carolina Department of Insurance "is considered sufficient service upon the company." S.C.Code Ann. § 15–9–270 (2005). Upon receiving the pleadings, the Director "shall immediately forward by registered or certified mail one of the duplicate copies prepaid directed toward the company at its home office...." *Id.* This is more than a ministerial task. Rather, it is consistent with other statutory responsibilities entrusted to the Director, including duties to (1) "see that all laws of this State governing insurers or relating to the business of insurance are faithfully executed[,]" (2) "report to the Attorney General or other appropriate law enforcement officials criminal violations of the laws relative to the business of insurance or the provisions of this title which he considers necessary to report[,]" and (3) institute civil actions when appropriate. S.C.Code Ann. § 38–3–110 (2002). In order to perform such duties, the Director needs to be informed when

---

3. *See, e.g.,* S.C.Code Ann. § 15–9–210(d) (2005) (regarding service of process on domestic corporations); S.C.Code Ann. § 15–9–240(c) (2005) (regarding service of process on foreign corporations authorized to transact business in South Carolina); S.C.Code Ann. § 15–9–245(f) (2005) (regarding service of process on foreign corporations not authorized to do business in South Carolina).

Service of process on unauthorized insurers can be accomplished through service on "the Secretary of State or his successor in office," service on "the Chief Insurance Commissioner or some person in apparent charge of his office," or service on "any person within this State" performing certain activities on the unauthorized insurer's behalf. S.C.Code Ann. §§ 15–9–280(a), 15–9–285(b), and 15–9–290 (2005). The statutes prescribing these methods do not "abridge[ ] the right to serve any process, notice, or demand upon any insurer in any other manner permitted by law," but litigants are not explicitly allowed to use alternative methods in lieu of the means set forth in sections 15–9–280, 15–9–285, and 15–9–290. S.C.Code Ann. § 15–9–300 (2005).

an insurer's misconduct is alleged to be sufficiently serious to warrant litigation. Requiring the aggrieved party to serve the Director as a prerequisite to acquiring jurisdiction over the insurer is a reasonable and efficient way to achieve this objective. Based on this reasoning, we hold that service on the Department of Insurance of the pleadings in any lawsuit against an insurance company is a right granted to the Department to enable it to fulfill the responsibilities with which it has been charged. The service of suit clause in Lexington's policy was ineffective to waive a right that was not Lexington's to waive. The trial court therefore erred as a matter of law in holding that the service of suit clause in Lexington's policy operated as a waiver of the right to be served according to section 15–9–270.

## CONCLUSION

We hold that the service of suit clause did not absolve White Oak of the responsibility to comply with the requirement in section 15–9–270 that it deliver two copies of its summons and complaint to the Director of the Department of Insurance in order to serve process on Lexington. We therefore reverse the trial court's denial of Lexington's motion to set aside the entry of default, vacate the judgment, and remand the matter to the trial court so that Lexington can file an answer within thirty days once service of process has been accomplished according to section 15–9–270. Because our determination of this issue is dispositive of this appeal, we do not address Lexington's other challenges to the validity of the service of process. See *Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling that because the determination of a particular issue was dispositive of the appeal, the appellate court did not need to review the remaining issues).

**REVERSED AND REMANDED.**

PIEPER and GEATHERS, JJ., concur.