# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Ex Parte: Trustgard Insurance Company,
Appellant/Respondent,

In Re:

Terence Graham, Plaintiff,

v.

Full Logistics, Inc., Defendant.

Of whom, Terence Graham is the Respondent/Appellant.

Appellate Case No. 2019-001506

—————

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

—————

Opinion No. 6027
Heard February 15, 2023 – Filed September 13, 2023

—————

**AFFIRMED**

—————

Shelley Sunderman Montague and Jessica Waller
Laffitte, both of Gallivan, White & Boyd, P.A., of
Columbia, for Appellant/Respondent.

William Franklin Barnes, III, of Barnes Law Firm, LLC,
of Hampton, and Brian T. Smith, of Brian T. Smith Law
Offices, of Greenville, both for Respondent/Appellant.

—————

**KONDUROS, J.:** This cross-appeal arises out of the circuit court's grant of Trustgard Insurance Company's motion to intervene and denial of Trustgard's motion to set aside default judgment. Trustgard appeals the denial of its motion to set aside the default judgment, and Terence Graham appeals the grant of the motion to intervene. We affirm.

## FACTS/PROCEDURAL HISTORY

On January 29, 2014, Johnnie William Foster had a single-vehicle motor vehicle accident while driving a commercial truck in Dorchester County during a winter storm. Graham was in the sleeping compartment of the truck when the accident occurred. Full Logistics, Inc., a commercial trucking company, owned the truck and employed both Foster and Graham. Graham suffered severe, permanent injuries including traumatic brain injury and other bodily injuries. Full Logistics had a commercial motor vehicle insurance policy with Trustgard[1] at the time of the accident. Drico Fuller (Fuller) owned Full Logistics as the sole shareholder with no other officers or agents. The South Carolina Secretary of State's records reflected that Fuller was the registered agent for the company.

Trustgard was notified of the accident on January 31, 2014, two days after it took place, and began an investigation. Around March 3, 2014, Trustgard received a letter of representation and a spoliation letter from Graham's attorney, Brian T. Smith. In March of 2014, Trustgard made the tractor available for Smith to inspect at Smith's request.

Over the next two years, Trustgard's representatives attempted to obtain information from Smith or his office. In an April 14, 2014 letter to Smith, a Trustgard claims representative stated she tried to reach him by phone and asked him to call her. On June 30, 2015, Jon Barrett, another claims representative, sent Smith a letter acknowledging he had spoken to Smith's office that day to verify Graham was in the course and scope of his employment with Full Logistics at the time of the accident and that Barrett would follow up with Smith after completing a review of the file. On September 4, 2015, Fuller replied to an email from Barrett, confirming Graham was a Full Logistics employee, among other details. Barrett responded, requesting documentation confirming Graham's employment status but did not receive any further reply. On September 11, 2015, Barrett sent a letter to

---

[1] The insurance company is also referred to as Grange Insurance Company in the record. Trustgard and Grange Insurance Company are both member companies of Grange Mutual Holding Companies.

Smith stating there were questions concerning coverage for Graham's injuries. On November 2, 2015, and December 1, 2015, Barrett sent letters to Smith asking if Graham was still receiving medical treatment and to confirm Graham's employer at the time of the accident. Smith failed to provide requested medical documentation of Graham's injuries or other requested information, including whether Graham was an employee of Full Logistics.

The Secretary of State's Office administratively dissolved Full Logistics on June 22, 2015. On December 30, 2015, the South Carolina Workers' Compensation Commission informed Graham's counsel it was unable to show Full Logistics was subject to the Workers' Compensation Act by regularly employing four or more people in South Carolina. On February 19, 2016, Graham's attorney notified the Workers' Compensation Commission he had discovered only two people worked for Full Logistics and both were independent contractors.

On June 15, 2016, Barrett, on behalf of Trustgard, sent a letter to Smith, stating Trustgard had reviewed the insurance policy and Graham's claim was denied. The letter indicated there was no liability coverage under the policy because Graham was an employee of Full Logistics at the time of the accident and workers' compensation "would be his only recourse for recovery."

On January 23, 2017, Graham filed a summons and complaint against Full Logistics.[2] Graham alleged negligent hiring, supervision, training, and entrustment against Full Logistics. He sought actual and punitive damages.

Graham made multiple attempts to serve Fuller as agent of Full Logistics. On January 28, 2017, a process server, Karen Garrett, attempted service at the last known address for Full Logistics but the location was under construction. On March 23, 2017, Garrett attempted service at another Greenville address but the person who answered the door did not know Fuller. Garrett ran a "skip trace" on Fuller and found a third address, 11 Cog Hill Drive in Simpsonville. Garrett attempted service at that address on March 24, 2017, but no one answered the door and she left her card.

Garrett found a mobile phone number for Fuller. When she called the number, Fuller answered the phone. She asked if he still lived at 11 Cog Hill Drive, and he

---

[2] The complaint also named Foster, the driver of Full Logistics' truck, as a defendant and alleged negligence and negligence *per se* causes of action against him. Foster filed an answer on March 15, 2017.

responded he did not and he had moved to North Carolina. He would not specify where. She stated she informed him she was a process server and had legal documents with which she needed to serve him as the registered agent for Full Logistics. She provided he told her "he no longer had this company because he wasn't making any money with it." She stated she told him he still needed to be served the documents because they related to when he did own Full Logistics. However, she indicated Fuller stated "he was told he didn't have to worry about this because the company had been dissolved." She stated she informed him he did need to be served but he hung up on her.

On April 27, 2017, Smith filed an affidavit seeking an order to allow service by publication on Full Logistics, attaching affidavits from Garrett, which described her unsuccessful attempts to serve Full Logistics through Fuller. Smith's affidavit described unsuccessful attempts to serve Full Logistics through Fuller and represented to the court an inability to serve Fuller through traditional means and need for an order to serve Full Logistics by publication.

On May 1, 2017, the Honorable Perry H. Gravely issued an order for service on Full Logistics by publication stating, "[A]fter due diligence, [Graham] is unable to make service of the Summons and Complaint in this action upon . . . Full Logistics, Inc., and that [Full Logistics] cannot be found within this county and this state although diligent efforts have been made." The record contains no indication publication was ever made.

On April 30, 2018, Graham filed an affidavit of default, which stated the summons and complaint were served on Full Logistics on April 28, 2017, by process server, Paul Silvaggio. An affidavit of service from Silvaggio was included as an exhibit and indicated Full Logistics was served at 11 Cog Hill Drive in Simpsonville

> via Drico Monte Fuller's wife, Bridget Lovone Hunter-Fuller [identified by residential address, verification of Mrs. Fuller that Drico Fuller is her husband of the same residence, a mail package on the front porch in the recipient name of Drico Fuller, Verification through the Certified 10 Year Driver Records obtained of Drico and Bridget Fuller along with TLO / TransUnion Verification of the residential address and verification through the SCDMV - Vehicle License Division] . . . .

(Brackets in original).

On May 15, 2018, Judge Gravely signed an order of default as to Full Logistics, which stated "Full Logistics, Inc. was served the Summons and Complaint on April 28, 2017, and no Answer has been filed on behalf of Defendant, Full Logistics Inc." On June 21, 2018, Graham mailed to Fuller at the 11 Cog Hill Drive address a notice of the damages hearing set for June 26, 2018.

The Honorable Letitia H. Verdin presided over the damages hearing. Full Logistics did not appear at the hearing. On July 24, 2018, Judge Verdin issued an order finding Graham "provided credible testimony" of his injuries. Judge Verdin stated Graham's actual medical expenses presented at the hearing totaled $57,536.85 and a doctor provided a cost projection for future medical expenses of $456,912.88. Judge Verdin awarded actual, compensatory damages of $1,843,349.73 and punitive damages of $1 million and entered judgment against Full Logistics for $2,843,349.73.

In October of 2018, Graham, via his attorney Smith, contacted Trustgard requesting it tender the $1 million insurance policy limits for Full Logistics. Trustgard hired Collins & Lacy, P.C. to investigate the claim and demand. Michael Burchstead, an attorney with Collins & Lacy, made several attempts to contact Fuller regarding the circumstances of service of process and his knowledge of the complaint. Burchstead's attempts to contact Fuller using numerous telephone numbers were unsuccessful. On October 29, 2018, Burchstead sent an email to Fuller at fulllogistics@hotmail.com and stated:

> I am an attorney in Columbia, SC and my firm has been retained by [Trustgard] in connection with an accident that took place in January 2014 involving one of your trucks and a lawsuit arising out of that accident. I have been trying to reach you to discuss certain matters regarding this accident and lawsuit, but I am unsure if my contact information is correct. Can you please give me a call at . . . as soon as you are able?

Collins & Lacy asked Larry Nelson, an investigator it employed, to look into service of the summons and complaint on Fuller. On October 30, 2018, Nelson successfully contacted Fuller. After identifying himself, Nelson requested Fuller's help with information regarding the April 28, 2017 alleged service of the summons and complaint on Fuller's wife, Bridget, at 11 Cog Hill Street. Fuller informed Nelson that nobody served Bridget but the papers were left on the porch. Fuller

also stated Bridget was not an officer or shareholder at Full Logistics, she did not have anything to do with the company, and he did not give her authorization to accept service on behalf of the company. Fuller stated he was not in Greenville and instead was in North Carolina and he would call his attorney and have him call Collins & Lacy. Nelson gave Burchstead's name and telephone number to Fuller and asked Fuller to have his attorney contact Burchstead. Nelson asked Fuller the name of his attorney, which Fuller stated was Michael Johnson of Charlotte, North Carolina. About fifteen minutes later, Fuller called Nelson, and Fuller stated he talked with his attorney, who advised him the case was from four years ago, it was over, and it had nothing to do with him. Fuller then ended the call.

Burchstead searched for all attorneys licensed in North Carolina and South Carolina with the name of Michael Johnson and found several possibilities. Burchstead contacted several of the options but could not locate an actual attorney with that name who confirmed he represented Fuller.

On November 8, 2018, Collins & Lacy, on behalf of Trustgard, rejected Graham's demand to tender the $1 million policy limits to settle Graham's claim. The letter stated Trustgard did not receive notice of the lawsuit and there was no coverage because Graham was a Full Logistics' employee.

On November 28, 2018, Fuller called Burchstead. Burchstead characterized Fuller's tone as agitated and felt as though Fuller interrupted any attempt to ask him questions or otherwise engage in the conversation. Fuller told Burchstead "he was receiving a lot of letters from attorneys about th[e] lawsuit," he did not know why, and he was personally served process and not his wife. However, Fuller would not answer any questions about the timing and circumstances regarding the service of process. Fuller referenced being served on or in his truck but would not provide any more details. Burchstead informed Fuller of the large default judgment and asked him to cooperate with the defense attorneys Trustgard had assigned him. Fuller disputed Trustgard did not have notice of the lawsuit but when pressed would not provide further details, and Burchstead believed Fuller was being evasive. According to Burchstead, after he asked Fuller additional questions, Fuller's tone grew more agitated and he abruptly hung up the phone.

Trustgard retained on Full Logistics' behalf separate counsel, attorneys Kerri Rupert and Ronald Diegel of Murphy & Grantland, P.A. On November 29, 2018, a motion to vacate and/or set aside the judgment for default damages was filed on behalf of Full Logistics.

Between December 3 and 13, 2018, Fuller exchanged text messages with Keith Johnson, a private investigator Rupert hired. On December 3, Fuller stated via text "I got served[.] I sent everything to the insurance company[.] [Y]'all dropped the ball[.] I am done with it. Please leave me alone." Fuller reiterated a few times that he had been served and he sent the information to the insurance company. Fuller denied Bridgett had been served. Johnson referenced an affidavit in the texts that Full Logistics' counsel wanted Bridget to sign that contained the following statements: "I recently discovered a $2.8 million judgment was entered against Full Logistics, Inc. because Full Logistics, Inc. did not answer a lawsuit filed against them"; I noticed papers for a lawsuit were left at my home . . . . I did not know what to do with them"; and "I did not provide these papers to the insurance company."

On December 10, 2018, during the time period the text messages were exchanged, Trustgard sent Full Logistics a letter stating it received notice of the lawsuit and hired a law firm to represent Full Logistics' interest. Trustgard's letter stated Full Logistics may want to hire personal counsel because the damages may exceed the policy limits and the plaintiff seeks punitive damages and obtained a judgment for punitive damages, which the policy did not cover.

On January 8, 2019, the Honorable Edward W. Miller conducted a hearing on the motion to vacate and/or set aside the judgment for default damages on behalf of Full Logistics. Rupert argued the service on Bridget as described in Silvaggio's affidavit, which Rupert described as leaving the papers on Bridget's porch, was improper under 4(d)(3), SCRCP. Judge Miller asked, "Why is that proper service? Seems like gutter service to me." Attorney William Barnes, who had been recently retained as cocounsel for Graham, responded the complaint had been served by Silvaggio. Barnes explained:

> [B]asically what [Silvaggio] did is he went to the address, 11 Cog Hill Drive, where Mr. Fuller lived. And his wife was there, verified a package on the front porch that was in the name of Drico Fuller. I think that's where . . . Rupert may be getting that this was left on the front porch. And he talked to her. We have provided a supplemental affidavit from . . . Silvaggio setting forth his credentials working for the Greenville County Sheriff's Office and all of that.

He talked to her, found out that Drico Fuller lived in the home. They resided together. He asked her about that. That's Exhibit 3. His supplemental affidavit, [Bridget] told him, being . . . Silvaggio, that he was not home and verified that there was a mail package on the home front porch addressed to Drico Fuller. He also asked in his supplemental affidavit, what he attest[ed] to, is he also inquired whether [Bridget] was an authorized agent of Full Logistics and she replied that she was when the company was operating.

Barnes further stated, "In this record before the [c]ourt, there is no affidavit from Mr. Fuller. There is no affidavit from [Bridget], or anything to that effect." Barnes argued, "[W]hat we have here on the service issue is, there is no evidence to rebut . . . Silvaggio's affidavit that he, in fact, served the wife of Drico Fuller and she was an agent of the company." Barnes concluded, "So we believe on that issue that service is proper. And Mr. Fuller is obviously here. I don't know what -- he may have gotten the complaint. He may be able to answer some questions. I don't know."

Fuller informed the court that he wished to be heard. Fuller testified, "I got served. I got the email stating where I sent everything to the insurance company. They dropped the ball. I gave them everything I had. When they served me, I sent it to them. We kept communication going." Fuller further stated, "Then they show up with a private investigator following my wife, trying to get her to sign an affidavit stating that she got served. I got served, not my wife. He left the affidavit paper on the front porch."

Judge Miller questioned Fuller as follows:

JUDGE MILLER: How did you get served?
MR. FULLER: I got served at my place of business.
JUDGE MILLER: Who served you?
MR. FULLER: She gave it to me. She said, are you Drico Fuller? And she gave me the piece of paper. And I sent everything to the insurance company.
JUDGE MILLER: Who was she?
MR. FULLER: I don't remember her name.
JUDGE MILLER: Was she white or black?
MR. FULLER: She was white.

JUDGE MILLER:  How old was she?

MR. FULLER:  She was an older lady.  White SUV, small SUV.

JUDGE MILLER:  Well, how old?

MR. FULLER:  About 50.  In her 50s.

Judge Miller further questioned Fuller:

JUDGE MILLER:  What did they give you when this woman served you?

MR. FULLER:  She gave me a packet.

JUDGE MILLER:  What kind of packet?  What was in it?

MR. FULLER:  A white packet.  She gave it to me.

JUDGE MILLER:  Do you remember what --

MR. FULLER:  Not right off, your Honor, not right off.

JUDGE MILLER:  And do you remember about when that was?

MR. FULLER:  No, not right off. . . .

. . . .

JUDGE MILLER:  Well, was this before or after the package was left on your front porch?

MR. FULLER:  I got served before.

JUDGE MILLER:  Do you know how much time passed?

MR. FULLER:  Not right off.

JUDGE MILLER:  Well, I mean, was it a year, or was it a month, or was it a week, that kind of thing.  You don't have to be exact.

MR. FULLER:  About a year, I think.

JUDGE MILLER:  A year?  Okay.  So then you sent whatever that was to your insurance company?

MR. FULLER:  Yes.

JUDGE MILLER:  And I tell you what, you say you got a copy of the email?

MR. FULLER:  Yes.  I got copies of what we had, communications and everything.

Judge Miller asked Fuller to let the lawyers review his documents. After reviewing, Rupert responded, "I don't see a copy of the lawsuit at all in the papers that were just handed to me. . . . [W]hen he said that he received -- he was served a year before the package was left on his doorstep, the summons and complaint hadn't even been filed then."

Judge Miller further questioned Fuller:

> JUDGE MILLER: Mr. Fuller, what did you do with the package that was left on your front porch?
> MR. FULLER: That was the affidavit they wanted me to sign to say that my wife got served.
> JUDGE MILLER: There was a package left on your front porch, right?
> MR. FULLER: An envelope.
> JUDGE MILLER: You got that?
> MR. FULLER: I got the affidavit. I got the copy of what he wanted me to sign to say my wife got served, which she didn't get served. I was the one that got served.
> JUDGE MILLER: With the package on your porch? There are two different circumstances we are talking about. I am not talking about the one where the woman in the white SUV gave you --
> MR. FULLER: Okay.
> JUDGE MILLER: The second time.
> MR. FULLER: Okay.
> JUDGE MILLER: What happened with that package?
> MR. FULLER: I am not even sure, your Honor. I don't even remember.
> JUDGE MILLER: Did you ever see it?
> MR. FULLER: I took it in the house, but I didn't even go through it. It was my understanding my insurance company was handling everything.
> JUDGE MILLER: You didn't send that to him?
> MR. FULLER: I sent everything to them from the first -- that I got.
> JUDGE MILLER: The first time.
> MR. FULLER: Yeah.

JUDGE MILLER:  But the second time, that second time, you just took it in the house, you don't know what you did with it?
MR. FULLER:  No, sir.

Judge Miller then continued the hearing.  Subsequently, Rupert and Diegel, the attorneys for Full Logistics, filed a motion to be relieved as counsel.[3]  On February 4, 2019, Graham's counsel sent a letter to Rupert and Diegel offering to settle the case for the $1 million policy limits as a full satisfaction of the approximately $2.84 million judgment against Full Logistics.  On February 15, 2019, on behalf of Trustgard, Collins & Lacy rejected the demand and instead offered Graham $100,000 in exchange for a full release.  The trial court granted Rupert and Diegel's motion to be relieved in an order filed March 5, 2019.  Trustgard retained new counsel to represent Full Logistics, Dorothy H. Hogg of Fulcher Hagler, LLP.

On February 22, 2019, Trustgard filed a motion to intervene, either as of right under Rule 24(a), SCRCP, or permissively under 24(b), SCRCP, and upon grant of an intervention, to set aside default judgment.  The motion included an affidavit by Collins & Lacy's investigator, Nelson, about his October 2018 investigation of the service of the summons and complaint on Fuller.

On April 3, 2019, Graham's counsel sent Hogg, Full Logistics' new counsel, a letter requesting that Full Logistics withdraw its Rule 60(b), SCRCP, motion.  It asserted improper service and surprise were no longer an issue because Fuller appeared and testified to receiving service and turning it over to Trustgard, which it contended text messages exchanged over a month prior to the January 8 hearing between Fuller and Johnson, the investigator hired by Rupert, confirmed.

On April 15, 2019, Trustgard filed a memorandum in support of its motion to intervene and set aside default judgment.  Trustgard indicated if it "is not allowed to intervene, it will have difficulty protecting its financial interest in this case."  As to the motion to set aside the default judgment, Trustgard argued first, under Rule 60(b)(4), SCRCP, the judgment was void because of improper service of process.  Alternatively, it maintained the judgment should be set aside for mistake, inadvertence, surprise, or excusable neglect, or fraud under Rule 60(b)(1) and (3), SCRCP, because Graham's counsel engaged in settlement negotiations with it, then failed to notify it when the suit was filed.  Trustgard also argued "[a] meritorious defense existed on the issue of damages, among other defenses, given that at the

---

[3] This motion was not included in the record on appeal.

default damages hearing[,] [Graham] presented $57,536.85 worth of medical bills and received a judgment of $2,843,349.73.  Further, Trustgard contended Graham would suffer no prejudice by having to pursue the case on the merits.

On April 23, 2019, Graham filed a memorandum in opposition to Trustgard's motion.  As to the default judgment, Graham argued Fuller testified he was served, waiving any argument as to defective service.  Graham also argued service on Bridget was proper.  Graham further argued his counsel's conduct was proper and not a basis for Rule 60(b)(1) relief and Trustgard could not show a meritorious defense.

On April 24, 2019, the Honorable Robin B. Stilwell held a hearing on Full Logistics' motion to set aside default judgment and Trustgard's motion to intervene and to set aside default judgment.  Full Logistics argued the evidence regarding service was conflicting but stated Fuller "wishes to stand on [his] testimony" from the prior hearing that he received service.  Judge Stilwell took the motions under advisement for thirty days to allow the parties to attempt settlement.  On July 3, 2019, Judge Stilwell notified the parties of his decision to grant Trustgard's motion to intervene but deny its motion to set aside the default judgment.  On July 18, 2019, after receiving Judge Stilwell's letter and before a formal order had been issued, Trustgard filed a motion to stay a formal ruling pending its request to conduct discovery in the issue of service.

On August 9, 2019, Judge Stillwell issued an order granting Trustgard's motion to intervene for the purpose of posing its motion to set aside the default, denying Trustgard's and Full Logistics' motions to set aside the default judgment, and denying the motion for a stay so that additional discovery could be conducted.  The order stated:

> Fuller testified under oath . . . on January 8, 2019 that he was personally served . . . .   Fuller not only acknowledged service in his testimony but also made a voluntary appearance on January 8, 2019.  Rule 4(d), SCRCP ("Voluntary appearance by defendant is equivalent to personal service").  In his testimony on January 8, 2019, Fuller never wavered from his position that he received notice of the lawsuit and did not contest proper service. . . .   Based on Fuller's testimony regarding personal service, the [c]ourt has personal jurisdiction.  The judgment is not void for lack of process . . . .

Additionally, the court found "[b]ased on Fuller's sworn testimony [on January 8, 2019,] acknowledging service, there is no mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation, or other misconduct that warrants setting aside the default judgment."  The court found Fuller's testimony he received personal service was corroborated by his communications with Burchstead and Johnson.  The court found setting aside the default judgment would prejudice Graham by reopening the proceedings and delaying the close of the case by several years.  The court denied Trustgard's request to conduct discovery on the issue of service, stating it saw "little profit in conducting additional discovery based on a party's hope that the testimony of witnesses or the evidence will change."  The court stated it "conducted a deliberate inspection of the circumstances of default" and found "[a]ny inconsistencies in the affidavit of service are overcome by Fuller's acknowledgement and acceptance of service."[4]

These cross-appeals by Trustgard and Graham followed.[5]

**LAW/ANALYSIS**

**I.      Trustgard's Appeal**

        **A. Lack of Evidentiary Support for Fuller's Testimony**

---

[4] Four days after Judge Stilwell's order and prior to Trustgard filing its notice of appeal, Trustgard filed a declaratory judgment action in federal court against Graham, Foster, and Full Logistics, seeking the court declare the policy did not provide liability coverage for the accident, Trustgard had no duty to defend or indemnify Full Logistics for the claims arising out of the accident, and if Trustgard is liable for the judgment, limiting its amount of liability.  Complaint, *Trustgard Ins. Co. v. Graham*, No. 6:19-cv-02269-TMC (D.S.C. Aug. 13, 2019).  Full Logistics filed an answer and counterclaim, alleging "Trustgard attempted to have its insured commit perjury and falsely state it was not served."  Answer & Counterclaim at 6, *Trustgard Ins. Co. v. Graham*, No. 6:19-cv-02269-TMC (D.S.C. Nov. 8, 2019).  Full Logistics asserted counterclaims for insurance bad faith, negligence, and attorney's fees under the South Carolina Claims Practice Act, sections 38-59-10 to -50 of the South Carolina Code (2015).  *Id*. at 4-11.  The district court stayed the case pending the outcome of this appeal.
[5] Full Logistics did not file an appeal and is not a party to these cross-appeals.

Trustgard contends the circuit court erred in accepting Fuller's testimony at face value notwithstanding a lack of evidentiary support and factual contradictions between this testimony and the proof of service supporting the default judgment. Trustgard asserts that giving credence to the testimony necessitates a conclusion that the default judgment is void. Trustgard further argues judicial estoppel bars Graham from changing his version of facts as to service of process.[6] Finally, Trustgard maintains Fuller's testimony should not have been considered without appropriate evidentiary support. We disagree.

"The trial court's findings of fact regarding validity of service of process are reviewed under an abuse of discretion standard." *Graham L. Firm, P.A. v.*

---

[6] Graham asserts Trustgard's argument on judicial estoppel is unpreserved because it did not mention judicial estoppel in either its memorandum in support of its motion or at the hearing on the motion, the circuit court did not rule on the issue, and Trustgard did not file a Rule 59(e), SCRCP, motion to reconsider. "Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the lower court." *Caldwell v. Wiquist*, 402 S.C. 565, 576, 741 S.E.2d 583, 589 (Ct. App. 2013) (quoting *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779-80 (2004)). Trustgard maintains the issue was preserved because it argued to the circuit court that Fuller's statements at the hearing and Silvaggio's statements in his affidavit conflicted and Graham was bound by the statements regarding service in the Silvaggio affidavit. It asserts it did not have to use the term judicial estoppel. *See Herron v. Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011) ("[A] party is not required to use the exact name of a legal doctrine in order to preserve the issue."); Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 186 (3d ed. 2016) (noting that "[a] party need not use the exact name of a legal doctrine in order to preserve" it as long as it is "clear the argument was presented on that ground"). Trustgard contends the circuit court considered this argument and therefore, the argument is preserved. Even assuming Trustgard sufficiently raised judicial estoppel to the circuit court, the circuit court did not rule on the issue. Accordingly, the issue of judicial estoppel is not preserved for our review on appeal. *See Caldwell*, 402 S.C. at 576-77, 741 S.E.2d at 589 ("[When] an issue has not been ruled upon by the trial [court] nor raised in a post-trial motion, such issue may not be considered on appeal." (quoting *Pelican Bldg. Ctrs. of Horry-Georgetown, Inc. v. Dutton*, 311 S.C. 56, 60, 427 S.E.2d 673, 675 (1993))); *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("If the losing party has raised an issue [to] the [trial] court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review.").

*Makawi*, 396 S.C. 290, 294-95, 721 S.E.2d 430, 432 (2012). "Credibility determinations regarding testimony are a matter for the finder of fact, who has the opportunity to observe the witnesses, and those determinations are entitled to great deference on appeal." *Okatie River, L.L.C. v. Se. Site Prep, L.L.C.*, 353 S.C. 327, 338, 577 S.E.2d 468, 474 (Ct. App. 2003). "Because the appellate court lacks the opportunity for direct observation of the witnesses, it should accord great deference to [circuit] court findings where matters of credibility are involved." *Lollis v. Dutton*, 421 S.C. 467, 483, 807 S.E.2d 723, 731 (Ct. App. 2017) (alteration by court) (quoting *S.C. Dep't of Soc. Servs. v. Forrester*, 282 S.C. 512, 516, 320 S.E.2d 39, 42 (Ct. App. 1984)). In *RRR, Inc. v. Toggas*, this court determined "the circuit court did not abuse its discretion in finding one witness's testimony more credible than another's in denying [a] motion to set aside [a] judgment." 378 S.C. 174, 182, 662 S.E.2d 438, 442 (Ct. App. 2008), *aff'd*, 381 S.C. 490, 674 S.E.2d 170 (2009) (per curiam). Our supreme court has noted, "Without explicit findings of fact by the circuit court, [an appellate court's] decision can only be based on the implicit credibility determination of the circuit court." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 652, 661 S.E.2d 791, 796 (2008).

"The purpose of the summons is to acquire jurisdiction of the person of the defendant and to give him notice of the action and an opportunity to appear and defend." *White Oak Manor, Inc. v. Lexington Ins. Co.*, 407 S.C. 1, 8-9, 753 S.E.2d 537, 541 (2014) (quoting *State v. Sanders*, 118 S.C. 498, 502-03, 110 S.E. 808, 810 (1920)). "[P]arties are generally permitted to agree to particular methods of service or waiving service altogether." *Id.* at 9, 753 S.E.2d at 541. "[W]here service is accomplished in a manner consented to by the defendant, service of process is valid and a court has jurisdiction over the defendant for purposes of entering judgment." *Fin. Fed. Credit Inc. v. Brown*, 384 S.C. 555, 565, 683 S.E.2d 486, 491 (2009). "[A] defendant may waive personal service by consent or by designating an agent to receive service of process." *Myrtle Beach Lumber Co. v. Globe Int'l Corp.*, 281 S.C. 290, 292, 315 S.E.2d 142, 143 (Ct. App. 1984). "Furthermore, allowing for the waiver of service is consistent with the principle that a defendant can waive personal jurisdiction." *White Oak Manor, Inc.*, 407 S.C. at 9, 753 S.E.2d at 541.

"Objections to personal jurisdiction, unlike subject matter jurisdiction, are waived unless raised." *Bakala v. Bakala*, 352 S.C. 612, 629, 576 S.E.2d 156, 165 (2003); *see also* Rule 4(d), SCRCP ("Voluntary appearance by [a] defendant is equivalent to personal service . . . ."). "A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Waiver requires a party to have known of a

right and known that right was being abandoned." *Sanford v. S.C. State Ethics Comm'n*, 385 S.C. 483, 496-97, 685 S.E.2d 600, 607 (citation omitted), *opinion clarified*, 386 S.C. 274, 688 S.E.2d 120 (2009).

Although the circuit court did not make any explicit findings on credibility, it did find Fuller was served based on his own testimony. By such a finding, the circuit court implicitly found Fuller credible. The circuit court found Fuller's service was supported by his communications with Trustgard's and Full Logistics' legal teams; the record reflects that prior to the hearing held by Judge Miller on the motion to vacate and/or set aside default judgment, Fuller had informed Burchstead as well as Rupert's investigator that he had been personally served. While we recognize the record also contains evidence to support the position that Fuller himself was not served, because the evidence is conflicting, we will defer to the circuit court. Accordingly, the circuit court did not abuse its discretion in finding based on Fuller's testimony Full Logistics was served.[7]

### B. Discovery

Trustgard asserts the circuit court erred in refusing to permit it to conduct discovery on the issue of service of process. Trustgard submits the circuit court erred in rejecting its request for a stay and the opportunity to conduct limited discovery into the circumstances of service of process. It asserts neither Graham nor Fuller have provided Trustgard any information into the circumstances of service, not even the date Fuller was allegedly served or what papers he was purportedly handed. Trustgard asserts its need for discovery is not frivolous and it should also be provided a full and fair opportunity to conduct discovery. We disagree.

In *Graham Law Firm, P.A.*, our supreme court looked at this court's previous explanation of the "application of due process concerns to issues of personal jurisdiction." 396 S.C. at 299, 721 S.E.2d at 435 (citing *Sullivan v. Hawker Beechcraft Corp.*, 397 S.C. 143, 151-52, 723 S.E.2d 835, 839-40 (Ct. App. 2011)).

---

[7] Graham contends as an additional sustaining ground for the circuit court's denial of the motion to set aside the default judgment he properly served Full Logistics through Bridget. We need not address this issue based on our determination the trial court did not err in finding Full Logistics was served based on Fuller's testimony. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address an issue when other issues are dispositive of the matter).

In *Sullivan*, this court stated, "When the plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous." *Id.* (quoting *Sullivan*, 397 S.C. at 151, 723 S.E.2d at 839). This court qualified that when "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction if it will be a fishing expedition." *Id.* (quoting *Sullivan*, 397 S.C. at 151, 723 S.E.2d at 839-40). This court found that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* (quoting *Sullivan*, 397 S.C. at 151-52, 723 S.E.2d at 840).

In *Graham Law Firm, P.A.*, the supreme court recognized "*Sullivan* dealt with minimum contacts analysis for out-of-state defendants, but the same reasoning applies to the question of whether a plaintiff is entitled to discovery in order to obtain evidence tending to show that the court has jurisdiction over an in-state defendant." *Id.* at 299 n.3, 721 S.E.2d at 435 n.3. "The *Sullivan* court further noted that 'a plaintiff is not required to assert he will be "meritorious" on personal jurisdiction; rather, he must demonstrate enough facts to support a prima facie showing [of jurisdiction].'" *Id.* (alteration by court) (quoting *Sullivan*, 397 S.C. at 152, 723 S.E.2d at 840). "The plaintiff may allege the necessary facts in the complaint or present them by way of affidavit." *Id.*

In *Graham Law Firm, P.A.*, the court concluded the plaintiff's claim the defendant corporation was served through a restaurant hostess at one of its properties was not necessarily so "conclusory, frivolous, or attenuated" as to not permit discovery. *Id.* at 300, 721 S.E.2d at 435. The court found the plaintiff's claim it served another employee of the corporation who may have had authority to accept service was likewise not so "conclusory, frivolous, or attenuated," as to deny the plaintiff's request for discovery. *Id.* The court held the plaintiff "must receive a full and fair opportunity to be heard on the matter, because the findings with regard to service of process may determine the merits of the case in chief." *Id.*

"The rulings of [the circuit court] in matters involving discovery will not be disturbed on appeal absent a clear showing of an abuse of discretion." *Bayle v. S.C. Dep't of Transp.*, 344 S.C. 115, 128, 542 S.E.2d 736, 742 (Ct. App. 2001). "An abuse of discretion occurs when the [circuit court's] ruling is based upon an error of law or, when based on factual conclusions, is without evidentiary support."

*Id.*

Typically, a plaintiff is seeking discovery to establish its service upon a defendant was sufficient to confer personal jurisdiction. In this case, instead, Fuller, as agent of the defendant, appeared at the motion to set aside default and confessed his receipt of service. Based on our determination that the circuit court did not abuse its discretion in finding Fuller accepted service, we find the circuit court did not err in failing to allow Trustgard to conduct discovery to determine if Fuller was actually served. We affirm the circuit court's denial of Trustgard's motion to stay entry of the order pending discovery.

## C. Failure to Set Aside

Trustgard maintains the circuit court erred in ruling that the judgment should not be set aside for mistake, inadvertence, surprise, or excusable neglect, or fraud due to Graham's counsel Smith's presuit conduct and failure to notify Trustgard of the default judgment. We disagree.

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)[, SCRCP]." Rule 55(c), SCRCP. "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for" reasons including "mistake, inadvertence, surprise, or excusable neglect;" "fraud, misrepresentation, or other misconduct of an adverse party;" or "the judgment is void." Rule 60(b)(1), (3), (4), SCRCP.

"Once a default judgment has been entered, a party seeking to be relieved must do so under Rule 60(b), SCRCP." *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 608, 681 S.E.2d 885, 888 (2009). "The standard for granting relief from a default judgment under Rule 60(b) is more rigorous than the 'good cause' standard established in Rule 55(c)." *Id.* "[R]elief from default judgment under Rule 60(b), SCRCP, 'requires a more particularized showing of mistake, inadvertence, excusable neglect, surprise, newly discovered evidence, fraud, misrepresentation, or "other misconduct of an adverse party."'" *ITC Com. Funding, LLC v. Crerar*, 393 S.C. 487, 494, 713 S.E.2d 335, 339 (Ct. App. 2011) (quoting *Sundown Operating Co.*, 383 S.C. at 608, 681 S.E.2d at 888); *see also Hill v. Dotts*, 345 S.C. 304, 309, 547 S.E.2d 894, 897 (Ct. App. 2001) ("In determining whether a default judgment should be set aside under Rule 60(b)(1), '[t]he promptness with which relief is sought, the reasons for the failure to act promptly, the existence of [a] meritorious defense, and the prejudice to the other

parties are relevant.'" (alterations by court) (quoting *N.H. Ins. Co. v. Bey Corp.*, 312 S.C. 47, 50, 435 S.E.2d 377, 379 (Ct. App. 1993)). "The different standards under the two rules underscore the clear intent to make it more difficult for a party to avoid a default once the court has entered a judgment, which carries greater finality, and often occurs later than, a clerk's entry of default." *Sundown Operating Co.*, 383 S.C. at 608, 681 S.E.2d at 888-89.

The discretion given to the trial court in deciding whether to grant relief from default makes "clear the party requesting a judgment by default is not entitled to one as of right, even when the defendant is technically in default." *Ricks v. Weinrauch*, 293 S.C. 372, 374-75, 360 S.E.2d 535, 536 (Ct. App. 1987). "[C]ourts should closely scrutinize default judgments to prevent harsh results and drastic action. It is the policy of the law to favor the trial of cases on the merits." *Renney v. Dobbs House, Inc.*, 275 S.C. 562, 567, 274 S.E.2d 290, 292 (1981). "The [c]ourt does not attempt . . . to decide the case on its merits, but only decides whether a prima facie showing has been made of a meritorious defense." *Lanier v. Lanier*, 251 S.C. 117, 119, 160 S.E.2d 558, 559 (1968) (quoting *Jenkins v. Jones*, 208 S.C. 421, 427, 38 S.E.2d 255, 257 (1946)). When a party has made "a good faith mistake of fact" and has not attempted "to thwart the judicial system," the court has a basis to vacate a default judgment. *Columbia Pools, Inc. v. Galvin*, 288 S.C. 59, 61, 339 S.E.2d 524, 525 (Ct. App. 1986).

"The [supreme c]ourt has never required exacting compliance with the rules to effect service of process, but instead looks to whether the plaintiff substantially complied with the rules such that the court has personal jurisdiction over the defendant and the defendant has notice of the proceedings." *White Oak Manor, Inc.*, 407 S.C. at 10, 753 S.E.2d at 542. "[N]othing in the South Carolina Rules of Civil Procedure requires the service of a courtesy copy of the summons and complaint on opposing counsel." *Id.* at 12, 753 S.E.2d at 543.

"The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial [court]." *Roberson v. S. Fin. of S.C., Inc.*, 365 S.C. 6, 9, 615 S.E.2d 112, 114 (2005). "The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion." *Id.* "An abuse of discretion in setting aside a default judgment occurs when" some error of law controlled the court issuing the order "or when the order, based upon factual, as distinguished from legal conclusions," lacks evidentiary support. *Id.* (quoting *In re Est. of Weeks*, 329 S.C. 251, 259, 495 S.E.2d 454, 459 (Ct. App. 1997)); *see also Fassett v. Evans*, 364 S.C. 42, 49, 610 S.E.2d 841, 845 (Ct. App. 2005) ("[T]he power to set aside a default judgment is addressed to the sound

discretion of the trial court whose decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion.").

Based on our determination of the previous issues, we affirm as to this issue because Trustgard has not set forth a sufficient basis for setting aside the default judgment.

### D. Meritorious Defense

Trustgard maintains the circuit court erred in failing to find that it had presented a meritorious defense. It asserts one of those defenses was on the issue of damages; Graham presented $57,536.85 worth of medical bills and received a judgment of $2,843,349.73. Trustgard also submits that the issues it has raised regarding service of process constitute a meritorious defense, notwithstanding that to prevail on the service of process issues themselves, a meritorious defense is not required.

This court has previously noted, once it had "concluded the trial court did not abuse its discretion in finding the Appellant was not entitled to relief on any of the grounds specified in Rule 60(b), SCRCP, we need not address whether the Appellant has a meritorious defense." *Crerar*, 393 S.C. at 496, 713 S.E.2d at 339-40. Because the record in the present case contains evidence in the form of Fuller's testimony that Full Logistics was served, we do not need to reach the issue of meritorious defense.[8]

## II. Graham's Appeal

---

[8] Trustgard also argues the circuit court erred in finding that Fuller's testimony satisfied the service of process requirements under Rule 4, SCRCP. It asserts Fuller's testimony did not constitute a valid voluntary appearance under Rule 4(d), SCRCP. It further contends Fuller's testimony did not otherwise comply with Rule 4. This finding of a voluntary appearance was not the only ground for finding that Full Logistics has been served. Based on our determination the circuit court did not abuse its discretion in ruling Fuller was served based on his testimony, we need not address this argument. *See I'On, L.L.C.*, 338 S.C. at 420, 526 S.E.2d at 723 ("It is within the appellate court's discretion whether to address any additional sustaining grounds."); *Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (declining to address an issue when other issues are dispositive of the matter).

Graham maintains the circuit court abused its discretion in granting Trustgard's motion for permissive intervention when its arguments are identical to other parties.  We disagree.

Intervention is allowed by Rule 24, SCRCP.  The Rule provides:

>     **(a) Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
>     **(b) Permissive Intervention.**  Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.  When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement[,] or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 24, SCRCP.

"To warrant intervention under Rule 24(b) an applicant should ordinarily show . . . he has a claim or defense involving a question of law or fact in common with the main action.  A mere general interest in the subject matter of the litigation is not sufficient." *S.C. Tax Comm'n v. Union Cnty. Treasurer*, 295 S.C. 257, 262, 368 S.E.2d 72, 75 (Ct. App. 1988).  This court has previously found an applicant

seeking to intervene "could not become a party to suit where its claim or defense would be identical to" a current party. *Id.* at 263-64, 368 S.E.2d at 76.

"Generally, the rules of intervention should be liberally construed where judicial economy will be promoted by declaring the rights of all affected parties." *Stoney v. Stoney*, 425 S.C. 47, 63, 819 S.E.2d 201, 210 (Ct. App. 2018) (quoting *Ex parte Gov't Emp.'s Ins. Co.*, 373 S.C. 132, 138, 644 S.E.2d 699, 702 (2007)). "Thus, this court 'should consider the practical implications of a decision denying or allowing intervention.'" *Id.* at 63-64, 819 S.E.2d at 210 (quoting *Ex parte Gov't Emp.'s Ins. Co.*, 373 S.C. at 138, 644 S.E.2d at 702). "The granting of intervention is wholly discretionary with the trial court and will be reversed only for abuse of discretion." *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 411, 581 S.E.2d 161, 168 (2003).

The circuit court did not err in allowing Trustgard a permissive intervention. Trustgard demonstrated that its position was not the same as Full Logistics. Accordingly, we affirm the circuit court's grant of Trustgard's motion to intervene.[9]

**CONCLUSION**

The circuit court's denial of Trustgard's motion to set aside the default judgment and grant of Trustgard's motion to intervene are

**AFFIRMED.**

**VINSON, J., and LOCKEMY, A.J., concur.**

---

[9] Trustgard further contends that as an alternative sustaining ground, it was also entitled to intervene as of right. Based on our determination the circuit court did not abuse its discretion in granting Trustgard's motion for permissive intervention, we need not address this argument. *See I'On L.L.C.*, 338 S.C. at 420, 526 S.E.2d at 723 ("It is within the appellate court's discretion whether to address any additional sustaining grounds."); *Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (declining to address an issue when other issues are dispositive of the matter).