681 S.E.2d 885

**SUNDOWN OPERATING COMPANY, INC., a South Carolina Corporation; Sunrise Coin Company, Inc., a South Carolina Corporation; and High Noon Properties, Inc., a South Carolina Corporation; Respondents,**

v.

**INTEDGE INDUSTRIES, INC., a New Jersey Corporation; Quickie Food Stores of North Myrtle Beach, Inc., d/b/a Hardwick's Bar & Restaurant Supplies, a South Carolina Corporation; BFPE International, Inc., f/k/a Atlantic Fire Systems, Inc., a Maryland Corporation; Wormald Fire Systems, Inc., f/k/a Ansul Fire Systems, Inc., a Delaware Corporation; and Ansul Incorporated, a Delaware Corporation, Defendants,**

**Of whom BFPE International, Inc., f/k/a Atlantic Fire Systems, Inc., a Maryland Corporation is, Petitioner.**

No. 26700.

Supreme Court of South Carolina.

Heard Feb. 5, 2009.

Decided Aug. 17, 2009.

602

Eugene Matthews, of Richardson, Plowden & Robinson, of Columbia, and Michael S. Hopewell, of Turner, Padget, Graham & Laney, of Florence, for Petitioner.

Daniel F. Blanchard, III, of Rosen, Rosen and Hagood, of Charleston, Peter F. Asmer, Jr., of Cozen O'Connor, of Charlotte, and Susan C. Rosen, of Rosen Law Firm, of Charleston, for Respondents.

Chief Justice TOAL.

This action for negligence and breach of contract arises out of a fire that burned down a restaurant and pub owned by Respondents Sundown Operating Company, Inc. ("Sundown"), Sunrise Coin Company, Inc. ("Sunrise"), and High Noon Properties, Inc. ("High Noon") (hereinafter referred to collectively as "Respondents"). Respondents filed suit against Defendant BFPE International, Inc. ("Petitioner") and four other defendants (hereinafter referred to collectively as "Defendants"). The trial court granted a default judgment against Petitioner, and following a damages hearing, the master-in-equity awarded damages to Respondents. Both parties appealed. The court of appeals affirmed the trial court. *Sundown Operating Co. v. Intedge Indus., Inc.,* Op. No. 2007–UP–091 (S.C. Ct. App. filed Feb. 23, 2007). We granted in part Petitioner's request for a writ of certiorari to review that opinion.

## FACTUAL/PROCEDURAL BACKGROUND

On September 16, 1998, Respondents' restaurant and pub burned down. On August 24, 2001, Respondents filed suit against Defendants, alleging that an electric fryer had malfunctioned and ignited a quantity of frying oil. Respondents had a service contract with Petitioner to install, maintain, inspect, and service the restaurant's fire extinguishing and suppression systems. Respondents asserted claims for negligence and breach of contract against Petitioner, on the grounds that Petitioner failed to properly maintain and inspect the fire suppression system.

Petitioner is incorporated in Maryland and has various business locations in Maryland, Virginia, North Carolina, and South Carolina. At the time of the lawsuit, Petitioner did not

have a registered agent listed with the South Carolina Secretary of State.

On August 27, 2001, Respondents mailed copies of the summons and complaint to Donald R. Leonard, who was Petitioner's registered agent in Maryland and North Carolina at the time, at two separate addresses in Myrtle Beach and Rocky Mount, North Carolina. In Myrtle Beach, Petitioner's manager, Randy Adams, received the package and was advised by the mail carrier that he could sign for Leonard, who was absent. Adams signed Leonard's name to the receipt, which was dated and returned to Respondents on August 28, 2001. In Rocky Mount, Leonard himself signed the return receipt on September 4, 2001.

On September 5, 2001, Leonard gave the summons and complaint to the general manager of Petitioner's Clayton, North Carolina office, who then forwarded the papers to Petitioner's vice-president. On or about September 14, 2001, Petitioner's vice-president notified Petitioner's insurance agent of the lawsuit. On October 1, 2001, the vice-president forwarded the summons and complaint to the insurance agent. On October 2, 2001, the insurance agent telephoned Respondents' counsel to request an extension of time to file an answer to the complaint. Respondents' counsel informed the agent that he had already moved for an entry of default based upon the August 28, 2001 service date. On October 2, 2001, the Horry County Clerk of Court filed the entry of default.

On October 18, 2001, Petitioner filed a motion to set aside default and permit enlargement of time. On October 29, 2001, Respondents filed a motion for a default judgment. On December 10, 2001, Respondents moved for, and the Horry County Clerk of Court filed, a second entry of default based upon the September 4, 2001 service date.

On March 18, 2002, the trial court conducted a hearing and found that Petitioner had shown good cause to set aside the entry of default and permit an enlargement of time to file an answer and instructed the company to submit a proposed order. The trial court based its ruling in part on the recent court of appeals decision in *Pilgrim v. Miller*, 2002 WL 44112 (S.C.Ct.App. Jan.14, 2002) (*Pilgrim I*). The next day, Respondents' counsel requested that the trial court delay its

formal order in light of the Court of Appeals' decision to rehear *Pilgrim I.* The trial court agreed. On June 17, 2002, the court of appeals reversed its original opinion in *Pilgrim I.*[1] *Pilgrim v. Miller,* 350 S.C. 637, 567 S.E.2d 527 (Ct.App.2002) (*Pilgrim II* ).

On July 18, 2002, the trial court again heard Petitioner's motion to set aside the entry of default. The trial court issued an order finding the August 28, 2001 service date to be invalid, but held that Petitioner was not entitled to set aside the entry of default with regard to the September 4, 2001 service date.

The case was then referred to the master-in-equity for a hearing to assess damages. The master entered judgment in the amount of: $273,336.00 in actual damages to Sunrise; $394,848.38 in actual damages to Sundown; and $524,800.70 in actual damages to High Noon. The master denied Respondents' requests for prejudgment interest.

The parties filed cross-appeals. The court of appeals held that Respondents were properly denied prejudgment interest; that both the August 28, 2001 and September 4, 2001 service dates were valid; and that the trial court did not err in failing to set aside the entry of default. Both parties filed petitions for a writ of certiorari with this Court. We denied Respondents' petition and granted in part Petitioner's petition. Petitioner presents the following question for our review:

Did the court of appeals err in failing to set aside the entry of default?

## STANDARD OF REVIEW

 The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge. *Harbor Island Owners' Ass'n v. Preferred Island Props., Inc.,* 369 S.C. 540, 544, 633 S.E.2d 497, 499 (2006). The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion.

---

1. Although the *Pilgrim II* opinion was vacated by this Court on April 25, 2003, the court of appeals in the instant case observed that the portions relied upon by the trial judge are "still good law." *See Bage v. Southeastern Roofing Co.,* 383 S.C. 489, 681 S.E.2d 867 (2009) (Shearouse Adv. Sh. No. 33 at 82) (discussing vacation of *Pilgrim II* opinion).

*Mitchell Supply Co., Inc. v. Gaffney,* 297 S.C. 160, 162–63, 375 S.E.2d 321, 322–23 (Ct.App.1988). An abuse of discretion occurs when the judge issuing the order was controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support. *In re Estate of Weeks,* 329 S.C. 251, 259, 495 S.E.2d 454, 459 (Ct.App.1997).

## LAW/ANALYSIS

▮ Petitioner contends that it has shown good cause under the minimal standard required by Rule 55(c), SCRCP, and that the trial court and the court of appeals erred in applying a heightened standard to conclude that the company was not entitled to set aside the entry of default. Although we have some concerns about the lower courts' conflation of the Rule 60(b) and Rule 55(c) standards, we do not believe Petitioner meets even the most minimal showing of good cause, and is therefore not entitled to relief from the entry of default.

### I. Differentiating the Standards for Relief Under Rule 55(c) and Rule 60(b)

We must acknowledge at the outset that there has been some recent confusion in the case law regarding the application of the standards for relief set forth in Rule 55(c) and Rule 60(b). We take this opportunity to reassert the basic legal premise that the standard for granting relief under Rule 60(b) is more rigorous than under Rule 55(c), and that an entry of default may be set aside for reasons that would be insufficient to relieve a party from a default judgment.

▮ Rule 55(a) provides that when a party fails to respond to a complaint, the clerk shall record an entry of default. However, Rule 55(c) permits a party to move to set aside the entry of default. The standard for granting relief from an entry of default under Rule 55(c) is mere "good cause." Rule 55(c), SCRCP. This standard requires a party seeking relief from an entry of default under Rule 55(c) to provide an explanation for the default and give reasons why vacation of the default entry would serve the interests of justice. Once a party has put forth a satisfactory explanation for the default, the trial court must also consider: (1) the

timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted. *Wham v. Shearson Lehman Bros., Inc.*, 298 S.C. 462, 465, 381 S.E.2d 499, 501–02 (Ct.App. 1989). The trial court need not make specific findings of fact for each factor if there is sufficient evidentiary support on the record for the finding of the lack of good cause. *Dixon v. Besco Engineering, Inc.*, 320 S.C. 174, 179, 463 S.E.2d 636, 639 (Ct.App.1995). A motion under Rule 55(c) is addressed to the sound discretion of the trial court. *Williams v. Stalnaker*, 312 S.C. 373, 375, 440 S.E.2d 408, 409 (Ct.App.1994).

■ Once a default judgment has been entered, a party seeking to be relieved must do so under Rule 60(b), SCRCP. The standard for granting relief from a default judgment under Rule 60(b) is more rigorous than the "good cause" standard established in Rule 55(c). *Ricks v. Weinrauch*, 293 S.C. 372, 374, 360 S.E.2d 535, 536 (Ct.App.1987). Rule 60(b) requires a more particularized showing of mistake, inadvertence, excusable neglect, surprise, newly discovered evidence, fraud, misrepresentation, or "other misconduct of an adverse party." Rule 60(b), SCRCP. The different standards under the two rules underscore the clear intent to make it more difficult for a party to avoid a default once the court has entered a judgment, which carries greater finality, and often occurs later than, a clerk's entry of default.

It is often observed, as the court of appeals held in the present case, that the criteria for obtaining relief from judgment under Rule 60(b)—mistake, inadvertence, excusable neglect, surprise, newly discovered evidence, fraud, misrepresentation—are relevant in determining whether good cause has been shown under Rule 55(c), SCRCP. *See New Hampshire Ins. Co. v. Bey Corp.*, 312 S.C. 47, 50, 435 S.E.2d 377, 378–79 (Ct.App.1993) (holding that, "as a practical matter," the 60(b) factors are relevant under both rules). However, we caution that this language invites trial courts to apply a heightened standard to Rule 55(c) motions. The Rule 60(b) factors are indeed relevant to a Rule 55(c) analysis, but only insomuch as proof of any one of these factors is sufficient to show "good cause." No trial court should ever find good cause lacking based solely on the absence of a Rule 60(b) factor.

## II. The Merits of Petitioner's Appeal

Petitioner argues that the trial judge should have set aside the entry of default because the company showed "good cause" by asserting its insurance agent was negligent for failing to answer the complaint and because (1) it promptly moved for relief; (2) it has a meritorious defense; and (3) Respondents would suffer no prejudice if the court set aside the entry of default. We disagree.

 Initially, we reject Petitioner's argument that it should be granted relief from the entry of default because it should not be held responsible for the negligence of its insurance agent in failing to answer the complaint. This argument is without merit, as the law is clear that an attorney or insurance company's misconduct is imputable to the client. *See Williams v. Vanvolkenburg,* 312 S.C. 373, 375, 440 S.E.2d 408, 409 (Ct.App.1994) (observing that an attorney's negligence in failing to answer is imputable to the defendant); *Roberts v. Peterson,* 292 S.C. 149, 151, 355 S.E.2d 280, 281 (Ct.App.1987) (recognizing that negligence of an attorney or insurance company is imputable to a defaulting litigant). Although the presence of other factors, in the totality of the circumstances, may amount to a showing of "good cause," a defendant may not be relieved from the entry of default *solely* because it relied to its detriment on a negligent insurance agent. *See Ricks,* 293 S.C. 372, 360 S.E.2d 535 (holding that good cause was shown in the totality of circumstances involving misplaced reliance on insurance agent).

In this case, Petitioner shares the responsibility for the entry of default with its insurance agent. Petitioner did not forward the summons and complaint to the insurance agent until approximately two weeks after initially notifying the agent of the lawsuit and several days after the time to answer expired. Furthermore, Petitioner's "good cause" argument is based entirely upon the September 4, 2001 service date. Petitioner has put forth no explanation with regard to the fate of the summons and complaint served on Randy Adams on August 28, 2001. As the court of appeals correctly held, this service was proper pursuant to *Roche v. Young Bros., Inc. of*

*Florence,* 318 S.C. 207, 456 S.E.2d 897 (1995).[2] Even if we were to assume that Petitioner showed good cause as to why the summons and complaint that arrived in Rocky Mount was not answered in a timely manner, we must nevertheless affirm the entry of default because Petitioner has failed to show good cause as to why the summons and complaint that arrived in Myrtle Beach went unanswered.

## CONCLUSION

For the reasons stated herein, we affirm the opinion of the court of appeals.

WALLER, PLEICONES, JJ., and Acting Justices R. KNOX McMAHON and E.C. BURNETT, III, concur.

---

**2.** We declined to grant certiorari as to this particular question.