741 S.E.2d 51

REGIONS BANK, Plaintiff,

v.

William S. OWENS, David S. Hostetler, Roland G.
Paddy and Greer State Bank, Defendants,

of whom, William S. Owens is the Appellant,

and

Regions Bank, Roland G. Paddy and Greer
State Bank are the Respondents.

Appellate Case No. 2011–193586.

No. 5113.

Court of Appeals of South Carolina.

Heard Oct. 1, 2012.
Decided April 10, 2013.

Gene McCain Connell, Jr., of Kelaher Connell & Connor, PC, of Surfside Beach; and Cheevin T. Lex Gardner, of Gardner Law Office, of Myrtle Beach, for Appellant.

Stephen Peterson Groves, Sr. and Robert Bruce Wallace, both of Nexsen Pruet, LLC, of Charleston; William Wesley Johnson, Jr., of Barfield & Johnson, LLC, of Lexington; and Sherman Brook Fowler, of Carter Smith Merriam Rogers & Traxler, PA, of Greenville, for Respondents.

LOCKEMY, J.

In this appeal from a mortgage foreclosure action, William Owens argues the master-in-equity erred in denying his motion to set aside entry of default. Owens contends the master erred in finding he failed to demonstrate good cause for failing to answer Regions Bank's (the Bank) summons and complaint as required by Rule 55(c), SCRCP. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On June 24, 2005, the Bank's records indicate it loaned Owens, Roland G. Paddy, and David S. Hostetler (collectively, Defendants) $700,000 to purchase approximately one hundred acres of land (the property) in Lexington County. In consideration for the loan, Defendants executed and delivered a promissory note and mortgage to the Bank. On March 31, 2009, following the maturity of the promissory note and in consideration for an extension of the maturity date to July 1, 2009, a second promissory note and assignment of rents was executed in the amount of $642,564 to the Bank. Defendants failed to pay the loan by July 1, 2009, thereby defaulting under the note.

On December 1, 2009, the Bank filed a mortgage foreclosure action seeking to recover the outstanding debt of $683,154.75

as well as attorney's fees and costs. Paddy filed and served his answer on January 15, 2010. Paddy admitted participating in the loan transaction but denied the outstanding loan amount and the Bank's entitlement to attorney's fees and costs. Owens and Hostetler failed to answer. Owens was personally served with the foreclosure pleadings at his business address on January 26, 2010. After Owens failed to file an answer, the case was referred to the master, and a final hearing was set for July 19, 2010. Counsel for the Bank filed an affidavit of default against Owens on March 19, 2010. The Bank notified Owens of the final foreclosure hearing by letter on June 22, 2010.

On July 16, 2010, Owens filed a motion to set aside entry of default, for leave to file an answer, and for a continuance. Owens asserted Paddy misrepresented he would answer on behalf of himself and Owens. In his proposed answer, Owens denied he participated in the loan transaction, denied he signed the loan documents, and alleged the Bank was negligent in processing the loan without his consent. Owens also asserted a counterclaim alleging the Bank violated the South Carolina Unfair Trade Practices Act.

The Bank deposed Owens, Paddy, and the loan closing attorney, Michele Paddy Refosco.[1] According to Owens, Paddy approached him about investing $100,000 in a "deal." Although Owens denied he knew the deal was to purchase the property, Owens stated Paddy had discussed the property with him and he understood Paddy intended to "turn around and sell" the property to a bottling company. Owens testified Paddy told him he could expect a significant return on his investment. Owens recalled he discussed the deal with Paddy for several months before he gave Paddy the $100,000 to invest. Owens and Paddy did not sign a contract or partnership agreement.

Owens denied purchasing the property, owning the property, or agreeing to participate in any financing for the property. According to Owens, he did not attend the loan closing at Refosco's office, and the signature on the 2005 promissory note is not his. Owens admitted he signed "a bunch of papers" Paddy brought to his office without reading them, but

1. Refosco is Paddy's daughter.

he could not recall what type of documents he signed. Owens testified he contacted Paddy after receiving the foreclosure summons and complaint, and Paddy represented to him he had retained an attorney and was "taking care of it." According to Paddy, he had discussions with Owens regarding the need to finance the property with the Bank. Paddy testified he attended the loan closing at Refosco's office along with Owens and Hostetler. Paddy testified Refosco explained the terms of the loan documents and all three Defendants signed the documents. Refosco also testified the Defendants signed the 2005 loan transaction documents in her presence at her law office on June 24, 2005.[2]

Owens admitted signing a limited power of attorney in favor of Paddy on May 24, 2007. Pursuant to the power of attorney, Owens authorized Paddy to execute in Owens's name the "HUD–1 Statement, Deed, Disbursement Authorizations, and any and all other closing documents in connection with the sale of [the property]." Owens, however, stated the power of attorney was solely for the purpose of allowing Paddy to pick up Owens's share of the property's sale proceeds in Columbia.[3] Paddy did not disagree with Owens's characterization, but stated that the power of attorney was also for the purpose of allowing Paddy to make decisions related to the property and sign documents associated with the property and its financing. Paddy signed the 2009 promissory note on behalf of Owens as attorney-in-fact. According to Paddy, he explained to Owens, prior to signing on his behalf, the terms of the transaction. Owens revoked the power of attorney on June 30, 2010.

After the Bank filed its mortgage foreclosure action, Paddy testified he hired an attorney to represent only himself and not Owens and Hostetler. Paddy stated he told Owens he had "hired a lawyer in that county to take care of whatever we had to do on this foreclosure and to keep me abreast of what was going on." According to Paddy, while the attorney was only representing Paddy, Paddy was "looking out for [Owens]." Paddy testified he did not tell Owens an attorney would appear on Owens's behalf.

---

2. Refosco testified she would not have witnessed and notarized the documents unless Owens had signed them in her presence.

3. Owens did not read the power of attorney agreement before signing it.

In a November 30, 2010 order, the master denied Owens's motion to set aside entry of default, finding Owens's mistaken belief that Paddy would answer the complaint on his behalf did not meet the "good cause" standard set forth in Rule 55(c), SCRCP. The master noted the record was void of any evidence Paddy agreed or suggested he would hire an attorney for Owens. The master found Owens failed to take steps to protect himself and should not be rewarded for his "own negligence and intentional ignorance." Subsequently, Owens filed a motion to reconsider, which the master denied on March 9, 2011. The appeal followed.

## STANDARD OF REVIEW

The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the circuit court. *Harbor Island Owners' Ass'n v. Preferred Island Props., Inc.,* 369 S.C. 540, 544, 633 S.E.2d 497, 499 (2006). The circuit court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion. *Mitchell Supply Co. v. Gaffney,* 297 S.C. 160, 163, 375 S.E.2d 321, 322 (Ct.App.1988). An abuse of discretion occurs when the judgment is controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support. *In re Estate of Weeks,* 329 S.C. 251, 259, 495 S.E.2d 454, 459 (Ct.App.1997).

## LAW/ANALYSIS

### I. Entry of Default

Owens argues the master erred in denying his motion to set aside entry of default because the Lexington County Clerk of Court failed to formally enter the default into the court records. Because Owens failed to raise this argument to the master, it is not preserved for our review. *See Doe v. Doe,* 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct.App.2006) ("To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court.").

### II. Good Cause

Owens argues the master erred in finding Owens failed to demonstrate good cause for failing to answer the complaint. We disagree.

Rule 55(a), SCRCP, provides that when a party fails to respond to a complaint, the clerk shall record an entry of default. However, Rule 55(c), SCRCP, permits a party to move to set aside the entry of default. The standard for granting relief from an entry of default under Rule 55(c) is mere "good cause." "This standard requires a party seeking relief from an entry of default under Rule 55(c) to provide an explanation for the default and give reasons why vacation of the default entry would serve the interests of justice." *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 607, 681 S.E.2d 885, 888 (2009). "Once a party has put forth a satisfactory explanation for the default, the trial court must also consider: (1) the timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted." *Id.* at 607–08, 681 S.E.2d at 888 (citing *Wham v. Shearson Lehman Bros., Inc.*, 298 S.C. 462, 465, 381 S.E.2d 499, 501–02 (Ct.App. 1989)). "The trial court need not make specific findings of fact for each factor if there is sufficient evidentiary support on the record for the finding of the lack of good cause." *Id.* "A motion under Rule 55(c) is addressed to the sound discretion of the trial court." *Id.*

Owens contends he has shown good cause for failing to answer the complaint. First, Owens argues Paddy misled him into believing Paddy had hired an attorney to answer the complaint on Owens's behalf. Owens asserts he reasonably relied on Paddy's representations because Paddy had his power of attorney, which allowed him to act on Owens's behalf regarding the property. Owens argues he immediately hired an attorney when he learned Paddy did not file an answer on his behalf. Owens maintains that, as a 79–year–old with a limited education, he was unaware he was signing loan documents and had complete trust in Paddy.

We find evidence in the record supports the master's finding Owens did not show good cause for failing to answer the complaint. While Owens testified he contacted Paddy after receiving the complaint and Paddy told him he had hired an attorney and would "take care of it," Paddy disputed this characterization. Paddy testified he never told Owens he had hired an attorney to represent him and file an answer on his behalf. Furthermore, Owens presented no evidence he took any steps to protect himself by contacting either Paddy or

Paddy's attorney to confirm an answer would be filed on his behalf. *See Hill v. Dotts,* 345 S.C. 304, 310, 547 S.E.2d 894, 897 (Ct.App.2001) (holding "a party has a duty to monitor the progress of his case. Lack of familiarity with legal proceedings is unacceptable and the court will not hold a layman to any lesser standard than is applied to an attorney.").

Owens argues he is entitled to relief pursuant to the factors outlined in *Wham. See Wham,* 298 S.C. at 465, 381 S.E.2d at 501–02 (holding the master shall consider the following factors in deciding whether to grant relief from an entry of default: (1) the timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted). Owens contends his motion for relief was timely, he had a meritorious defense, and the Bank would not be prejudiced. Because we find the master did not err in finding Owens failed to show good cause for failing to answer the complaint, we need not consider the *Wham* factors. *See Sundown,* 383 S.C. at 607–08, 681 S.E.2d at 888 (holding a court need only consider the *Wham* factors "[o]nce a party has put forth a satisfactory explanation for the default"); *Dixon v. Besco Eng'g, Inc.,* 320 S.C. 174, 179, 463 S.E.2d 636, 639 (Ct.App.1995) (holding the trial court is not required to make specific findings of fact on the record for each *Wham* factor if the record contains sufficient evidentiary support for the finding of lack of good cause).

Owens also asserts the master erred in applying an excusable neglect standard in determining Owens was not entitled to any relief. Although the master discussed this standard during the hearing on Owens's motion to reconsider, the master also discussed good cause during the hearing on Owens's motion to set aside entry of default, and he properly applied the good cause standard in his final order.

■ Finally, Owens argues the master erred in citing *Pilgrim v. Miller,* 350 S.C. 637, 567 S.E.2d 527 (Ct.App.2002), in his order. The master cited *Pilgrim* for the proposition that a defendant's mistaken belief that a fellow defendant would file an answer on his behalf does not meet the good cause standard. In *Pilgrim,* this court noted that "[t]he courts of this state have consistently held that the negligence of an attorney or insurance company is imputable to a defaulting litigant." 350 S.C. at 642, 567 S.E.2d at 529. Here, the master conclud-

ed that "[i]f reliance on one's own attorney is insufficient to show 'good cause,' then reliance on another defendant and *his* attorney is equally insufficient." Owens contends the master's reliance on *Pilgrim* was an error of law because *Pilgrim* was vacated by our supreme court. We agree with Owens that *Pilgrim* was vacated on April 25, 2003. *See Bage, LLC v. Se. Roofing Co. of Spartanburg, Inc.*, 383 S.C. 489, 490, 681 S.E.2d 867 (2009) (noting the parties in *Pilgrim* settled while the petition for certiorari was pending before our supreme court; therefore, the decision was vacated). However, the master's reliance on *Pilgrim* was not an error justifying reversal because the proposition for which *Pilgrim* stands was not overturned by the court and remains the law of this state. *See Sundown*, 383 S.C. at 609, 681 S.E.2d at 889 (holding "the law is clear that an attorney or insurance company's misconduct is imputable to the client").

## CONCLUSION

Based on the foregoing, we find the master did not abuse his discretion in refusing to grant Owens relief under Rule 55(c), SCRCP. Accordingly, the master's order is

AFFIRMED.

SHORT and KONDUROS, JJ., concur.