# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Palmetto Construction Group, LLC, Respondent,

v.

Restoration Specialists, LLC, Reuben Mark Ward, and
Lynnette Pennington Ward, Appellants.

Appellate Case No. 2022-001224

———

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

———

Opinion No. 6083
Heard June 5, 2024 – Filed August 14, 2024

———

**AFFIRMED AS MODIFIED**

———

Warren W. Ariail and A. Bright Ariail, both of Ariail
Law Firm, LLC, of Charleston, for Appellants.

Jaan Gunnar Rannik, of Epting & Rannik, LLC, and
Michelle N. Endemann, both of Charleston, for
Respondent.

———

**KONDUROS, J.:**  Palmetto Construction Group, LLC (PCG) filed suit against a
former business associate, Restoration Specialists, LLC (Restoration), Reuben
Mark Ward (Mark), and Lynnette Pennington Ward (Lynette) (collectively
Appellants), arising out of a construction project to build a parking garage for the
United States Department of Veterans Affairs (VA) in Augusta, Georgia.
Appellants were held in default for failure to answer and filed an appeal giving rise
to the threshold question of whether an entry of default, which has the collateral

effect of avoiding arbitration, is immediately appealable. Having determined the matter was not immediately appealable, the South Carolina Supreme Court remitted the case to the master-in-equity for a damages hearing.[1] This case involves the appeal on the merits of the master's refusal to set aside the entry of default and the award of damages. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

The VA awarded Restoration a contract to construct a parking garage in Augusta, Georgia. The contract between the VA and Restoration was dated March 29, 2012, though the project was delayed for several years. The total contract price was $8.1 million. Restoration was the general contractor and responsible for hiring subcontractors and obtaining a payment and performance bond.

Mark is the owner of Restoration, and Lynnette is his wife. Restoration is a Georgia LLC. PCG is a South Carolina LLC that specialized in concrete work. In November of 2011, Restoration entered into a Teaming Agreement with PCG. The Teaming Agreement contemplated that Restoration and PCG would work together on multiple construction projects. Thereafter, Mark approached PCG about working on the VA Project as a concrete subcontractor, as well as in a supervisory capacity. Further, as Restoration was unable to secure the sizable bond the VA Project required, Mark asked that PCG obtain the bond from its surety, The Hanover Insurance Group. PCG agreed, and the parties entered into a subcontract dated September 10, 2014. Per the terms of the parties' agreement, PCG obtained the payment and performance bond from Hanover. However, Hanover required that both PCG and Restoration, as well as their respective principals and their spouses, sign an indemnity agreement requiring them to indemnify Hanover for any sums it expended in paying claims made on the bond.

PCG performed the concrete work, and as the project neared completion, PCG asked that the parties meet to discuss the profit split provided for in the subcontract. However, PCG was alerted that several of Restoration's subcontractors had not received payment and PCG believed it was still owed money pursuant to its own subcontract with Restoration. It soon became apparent

---

[1] *See Palmetto Constr. Grp. v. Restoration Specialists, LLC* (*Palmetto II*), 432 S.C. 633, 639, 856 S.E.2d 150, 153 (2021) ("In this case, the simple fact the master refused to set aside the entry of default, thereby preventing the defendants from requesting the court to compel arbitration, does not mean the order was immediately appealable.").

that multiple subcontractors were owed money, which Hanover was required to pay in the amount of $1,307,978.71.[2] Hanover in turn made a demand under its indemnity agreement for the contract balance. At this point, Restoration had collected over $8 million of the $8.1 million contract.

PCG filed suit on March 7, 2016, bringing multiple causes of action against Appellants to obtain the subcontract balance, PCG's share of the project profits, the funds to repay the surety, and other relief, as well as seeking an accounting to discover how Restoration had disposed of the funds it had received. PCG filed and served a summons and complaint and a motion to stay and compel arbitration on Appellants on March 14, 2016. Appellants failed to answer the summons and complaint within the allotted thirty days, and five days later, on April 18, 2016, PCG filed a motion for default, sought reference to the master-in-equity, and withdrew its motion to stay and compel arbitration. The circuit court entered an order finding Appellants in default on April 20, 2016, referred the matter to the master, and a damages hearing was set for June 6, 2016. According to Mark, Appellants were served with notice of the damages hearing on June 2, 2016. The following day, they obtained counsel, who later that same day filed a motion for relief from the entry of default pursuant to Rule 55, SCRCP and a motion to compel arbitration. Mark attested he had been in discussions with an attorney from Hanover a few days prior to being served. According to his affidavit, Mark and Lynette (collectively, the Wards) were not attorneys and they believed the summons and complaint related to the matters they were resolving with Hanover. Upon being served with notice of a damages hearing on June 2, 2016, they realized this was not the case and immediately hired an attorney. The master denied Appellants' motion to set aside the entry of default without analysis other than concluding Appellants failed to show good cause why they should be relieved. Appellants filed to motion for reconsideration, which the master also denied.

As previously mentioned, Appellants filed an appeal from those orders, which the supreme court ultimately held to be not immediately appealable. In the interim, documents were filed with the South Carolina Secretary of State purporting to dissolve PCG, and Appellants moved for the master to dismiss this case based on a resulting lack of subject matter jurisdiction. The master held a hearing on this motion, and after PCG presented evidence the filing was a clerical error and its LLC status had been restored, the master denied the motion.

---

[2] The amount Hanover claimed it was owed varied over time based on the disposition of claims but was this amount at the time of the damages hearing.

Upon the exhaustion of appellate review, the supreme court remitted the case to the master, who held a damages hearing in which PCG was allowed to present witnesses, subject to Appellants' cross-examination, and evidence based on Appellants' default. *See Solley v. Navy Fed. Credit Union, Inc.*, 397 S.C. 192, 203-04, 723 S.E.2d 597, 603 (Ct. App. 2012) ("At the damages hearing, the defendant may only participate by cross-examining witnesses and objecting to evidence."). PCG's controller, Kathryn Peterson, testified and presented spreadsheets she had created showing the amounts owed to PCG under the subcontract. She also presented documentation of payments made to PCG by Restoration during the project that supported PCG's position the parties had agreed to a 50/50 profit sharing. She testified PCG was forced out of business after this project because being in default on the surety bond prevented it from securing other bonds necessary to bid and work on other projects. Letters to PCG from Hanover confirmed Hanover had paid out $1,307,978.71 on the bond. Peterson testified PCG had lost approximately $250,000 based on the past years' profits of the business and requested attorney's fees for dealing with this matter.

On cross-examination, Peterson indicated PCG had made no payments to Hanover in satisfaction of the bond debt. She further acknowledged issues and litigation regarding several other projects at the time the VA Project began experiencing problems. Peterson admitted the subcontract between PCG and Restoration was for a sum certain, $1,082,342, and PCG had been paid $1,096,858.69. However, her bookkeeping indicated PCG had expended additional sums on the project based on change orders directed by the VA but that Mark refused to sign. Therefore, the total actually due to PCG for those additional costs under the contract was greater than the subcontract amount. Peterson also confirmed the teaming agreement did not dictate profit sharing but an additional document referenced in the Teaming Agreement did. She also produced payments made to PCG in the early performance of the VA Project reflecting Restoration was giving PCG a 50% share of the profits.

The master awarded damages as follows:

- Amount due under subcontract—$184,858.69
- Amount equaling 50% of job profit—$225,389.81
- Amount surety (Hanover) had paid out in claims—$1,307,978.71
- Amount of prejudgment interest on subcontract amount and surety bond amount from date of originally scheduled damages hearing (October 4, 2016) at 7.25%— $83,674.28 and $537,057.15, respectively.

- TOTAL AWARD—$2,338,958.64[3]

Appellants filed a motion for reconsideration, which the master denied. This appeal followed.

**LAW/ANALYSIS**

## I.  Default

Appellants maintain the master erred in denying their motion to set aside the entry of default. We disagree.

"The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge. The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion." *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 606, 681 S.E.2d 885, 888 (2009) (citations omitted). "An abuse of discretion occurs when the judge issuing the order was controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support." *Id*. at 607, 681 S.E.2d at 888.

"Rule 55(a)[, SCRCP] provides that when a party fails to respond to a complaint, the clerk shall record an entry of default.[4]  However, Rule 55(c)[, SCRCP] permits a party to move to set aside the entry of default." *Id*.  "The standard for granting relief from an entry of default under Rule 55(c) is mere 'good cause.'" *Id*. (quoting Rule 55(c), SCRCP).  "This standard requires a party seeking relief from

---

[3] The master declined to award PCG $250,000 in lost profits and $29,564.91 in attorneys' fees and costs as too speculative.

[4] Appellants also argue they have demonstrated excusable neglect under Rule 60(b), SCRCP, to merit the setting aside of the default. However, Rule 60(b) applies only to motions to relieve a default judgment, not the entry of default. *See* Rule 60(b)(1), SCRCP (providing the court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect").  Moreover, this issue is not preserved for review and even if it were, excusable neglect requires a higher showing than good cause. As we affirm the master's decision on good cause, we cannot conclude the same fact pattern would establish excusable neglect. *See Sundown*, 383 S.C. at 608, 681 S.E.2d at 888 ("The standard for granting relief from a default judgment under Rule 60(b) is more rigorous than the 'good cause' standard established in Rule 55(c).").

an entry of default under Rule 55(c) to provide an explanation for the default and give reasons why vacation of the default entry would serve the interests of justice." *Id*. "Once a party has put forth a satisfactory explanation for the default, the trial court must also consider: (1) the timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted." *Id*. at 607-08, 681 S.E.2d at 888 (citing *Wham v. Shearson Lehman Bros.*, 298 S.C. 462, 465, 381 S.E.2d 499, 501-02 (Ct. App. 1989)). "The trial court need not make specific findings of fact for each factor if there is sufficient evidentiary support on the record for the finding of the lack of good cause." *Id*. at 608, 681 S.E.2d at 888 (citing *Dixon v. Besco Eng'g, Inc.*, 320 S.C. 174, 179, 463 S.E.2d 636, 639 (Ct. App. 1995)).

In this case, the master did not make findings of fact regarding the factors to relieve default other than stating Appellants had not shown good cause. However, if the record reveals sufficient facts to support this finding, then the other factors do not have to be addressed. Mark attested Appellants failed to timely answer the complaint because prior to the service of the summons and complaint he had spoken with an attorney for Hanover about resolving the outstanding claims against the surety bond. He indicated that he and Lynette were not attorneys and that they did not recollect receiving any documents related to the case after service of the summons and complaint until they received a notice of the damages hearing. Upon receipt of this notice, they hired an attorney immediately and filed a motion for relief from the entry of default.

In *Hill v. Dotts*, 345 S.C. 304, 306, 547 S.E.2d 894, 895 (Ct. App. 2001), this court denied defendant's motion to set aside a default judgment. In that case, the defendant maintained his failure to understand the legal process constituted excusable neglect and argued his belief he was uninsured also excused his failure to answer. *Id*. at 310-11, 547 S.E.2d at 897. This court found, "[A] party has a duty to monitor the progress of his case. Lack of familiarity with legal proceedings is unacceptable and the court will not hold a layman to any lesser standard than is applied to an attorney." *Id*. at 310, 547 S.E.2d at 897 (quoting *Goodson v. Am. Bankers Ins. Co.*, 295 S.C. 400, 403, 368 S.E.2d 687, 689 (Ct. App. 1988)). "It is always a matter of regret that a party should not have his day in court. However, . . . [where] the appellant was duly served with the summons and complaint, [i]t was his duty to answer the complaint. . . . [Therefore,] [h]e must suffer the consequence of his failure to answer." *Id*. (quoting *Williams v. Ray*, 232 S.C. 373, 383-84, 102 S.E.2d 368, 373 (1958)).

In *Regions Bank v. Owens*, 402 S.C. 642, 648, 741 S.E.2d 51, 54 (Ct. App. 2013), this court affirmed the master's refusal to set aside an entry of default based on Owens's contention he contacted his power-of-attorney who said he had hired an attorney and would "take care of it."[5] The court noted "Owens presented no evidence he took any steps to protect himself by contacting either [the power-of-attorney] or [the power-of-attorney's lawyer] to confirm an answer would be filed on his behalf." *Id*. at 648-49, 741 S.E.2d at 54-55. Relying on *Hill*, the court again noted "a party has a duty to monitor the progress of his case" and a "[l]ack of familiarity with legal proceedings is unacceptable" as an excuse for the failure to answer. *Id*. at 649, 741 S.E.2d at 55.

Furthermore, comparing and contrasting two particular cases from this court are helpful in evaluating Appellants' claim. Recently, in *Jordan v. Hartford Financial Group, Inc.*, 435 S.C. 501, 504, 868 S.E.2d 400, 401 (Ct. App. 2021), this court considered good cause for missing a filing deadline in a worker's compensation case. The court noted the form indicated the complaining party "'may' file a brief within fifteen days of service" but the form "did not state that an appeal could be dismissed for failure to timely file a brief." *Id*. The court further found the trial court in that case did not demonstrate it understood that it had discretion in determining good cause and therefore abused its discretion by not exercising any. *Id*. at 505, 868 S.E.2d at 402. The case sub judice aligns more with *Wham v. Shearson Lehman Brothers*. There, the circuit court found the defendant was properly noticed with the need to respond and the possible consequences. *Id*. at 464, 381 S.E.2d at 501. "[The summons] tells Shearson Lehman that its failure to respond within the prescribed period will result in Wham's demanding from the court the relief sought in his complaint, which is another way of saying that judgment by default will be taken against Shearson Lehman should it fail to appear and defend the action." *Id*.

In this case, the summons stated: "You are hereby summoned and *required* to answer the Complaint herein . . . within thirty (30) days . . . and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint." (emphasis added). Palmetto Construction Group, LLC is denominated as the Plaintiff and Restoration Specialists, LLC; Mark; and Lynette are denominated as the Defendants. Hanover is mentioned as the surety but never as a party to this action. Furthermore, Hanover's involvement is clearly separate from PCG's causes of action for amounts

---

[5] The power-of-attorney disputed this characterization of their conversation. *Regions Bank*, 402 at 648, 741 S.E.2d at 54.

owed to it under the sub-contract and profit sharing.[6] Appellants' misunderstanding of the legal process or the status of any discussions with Hanover are not sufficient good cause to excuse their failure to answer.

Based on all of the foregoing and the strict standard of review for setting aside an entry of default, we affirm the master's decision.

## II.    Arbitration

Appellants contend the master erred in denying their motion to stay and compel arbitration pursuant to the contract between the parties based on Appellants' default constituting a waiver of the right to arbitrate.  We disagree.

This court actually addressed this argument in its opinion issued during the case's original appellate process.  *See Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC* (*Palmetto I*), 428 S.C. 261, 267-70, 834 S.E.2d 204, 207-08 (Ct. App. 2019), *aff'd as modified*, 432 S.C. 633, 856 S.E.2d 150 (2021).  While the supreme court affirmed the court of appeals' finding the matter on appeal was interlocutory, it also determined the court of appeals should not have addressed the waiver of arbitration at that juncture and vacated that portion of the court of appeals' opinion.  Nevertheless, the matter was soundly addressed in *Palmetto I*, and given that now is the proper time to address the issue, adoption of the court's rationale is appropriate and we adopt that herein.  The relevant, previously vacated portion of that opinion determined the following:

> [W]e find [Restoration] waived [its] right to arbitration. "It is generally held that the right to enforce an arbitration clause may be waived." *Liberty Builders, Inc. v. Horton*, 336 S.C. 658, 665, 521 S.E.2d 749, 753 (Ct. App. 1999). "In order to establish waiver, a party must show prejudice through an undue burden caused by delay in demanding arbitration.  There is no set rule as to what constitutes a waiver of the right to arbitrate; the question depends on the facts of each case." *Id.* at 665, 521 S.E.2d at 753 (citations omitted) (internal quotations omitted).
>
> . . . .

---

[6] Mark did not assert the simultaneous filing of the motion to compel arbitration impacted his failure to answer the summons and complaint.

Other jurisdictions have found arbitration waived when a defaulting party seeks to compel it.[7]  In *Tri-State Delta Chemicals, Inc. v. Crow*, 61 S.W.3d 172, 173 (Ark. 2001), the Supreme Court of Arkansas considered whether a defendant's default on a suit filed in circuit court effectively waives any right to compel arbitration. Similar to our case, the trial court did not consider the defendant's motion to compel arbitration because it determined the defendant was in default.  *Id*. at 173.  The Supreme Court of Arkansas initially determined because the issue of damages had not been decided, the default judgment was not a final decision and accordingly, was not appealable.  *Id*. at 174.  Further, the court stated, "While we agree that, generally, a denial of a motion to compel arbitration is an immediately appealable order, we do not believe that an interlocutory appeal will lie under the circumstances of this case."  *Id.*  Instead, the court determined the defendant "waived any right it may have had to compel arbitration when it failed to timely assert arbitration as a defense to the suit." *Id*.  The court cited to a New York trial court decision finding:

"Though arbitration clauses are generally enforceable, they cannot be used to bypass the statutory provisions requiring that pleadings be answered or to thwart a proper motion for a default judgment.  The Defendant effectively waived its right to enforce the arbitration clause when it failed to answer or appear in response to the summons and complaint under circumstances where there was no reasonable excuse for such default."

---

[7] The court also noted citations to supportive authorities used by this court in *Wham*, although, this precise issue was not decided in *Wham*.  *See Wham*, 298 at 466, 981 S.E.2d at 502 (citing *Miller v. British Am. Assurance Co.*, 238 S.C. 94, 119 S.E.2d 527 (1961) (referring to an arbitration agreement set up in the answer as a 'special defense'); 5 Am. Jur. 2d *Arbitration and Award* § 51 at 556-57 (1962) (one's right to arbitrate given by contract may be waived by failing to raise the right in an answer)).

*Id.* (quoting *Charming Shoppes, Inc. v. Overland Constr., Inc.*, 717 N.Y.S.2d 860, 863 (N.Y. Sup. Ct. 2000)). Determining the plaintiffs properly served the defendant and the defendant failed to timely assert its right to arbitrate, the Supreme Court of Arkansas opined the defendant waived this right. *Id.* "The right to seek arbitration is a defense to civil litigation. Like any other defense, it may be waived by failing to timely assert it under the rules of civil procedure." *Id.* at 175.

Other jurisdictions have made similar determinations. *See Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 535-36 (Tex. Ct. App. 2007) (finding Interconex waived any right to arbitration that it may have had when it failed to file a timely answer); *LaFrance Architect v. Point Five Dev. S. Burlington, LLC*, 91 A.3d 364, 372 (2013) ("The presumption in favor of arbitration, however, must be viewed within the context of its underlying purpose: to provide speedy, cost-effective resolution of disputes. To allow a party to 'cry arbitration' in order to undo the consequences of its own errors would turn the rationale of arbitration on its head."); *Woodruff v. Spence*, 883 P.2d 936, 938 (Wash. Ct. App. 1994), *as amended* (Jan. 30, 1995) ("Whether Mr. Spence knowingly waived his right to arbitration depends on whether he had notice of the action against him prior to entry of the default judgment."); *State ex rel. Barden & Robeson Corp. v. Hill*, 539 S.E.2d 106, 112 (W. Va. 2000) ("In this case, unless it is able to show good cause for its default, Robeson has waived its right to assert arbitration as an affirmative defense against continued litigation in the circuit court.").

PCG properly served Appellants with notice of its claims. Appellants failed to timely answer or respond to those claims. Thus, Appellants effectively waived their right to assert enforcement of the arbitration provision.

*Palmetto I*, 428 S.C. at 267-70, 834 S.E.2d at 207-08.

Based on the sound reasoning of this court's previous analysis, we affirm the master.

### III.    Subject Matter Jurisdiction

Appellants contend the master erred in denying their motion to dismiss based on PCG's termination.  We disagree.

Section 33-44-805 of the South Carolina Code (2006) provides:

> (a)  At any time *after dissolution and winding up, a limited liability company may terminate its existence* by filing with the Secretary of State articles of termination stating:
>
> (1) the name of the company;
>
> (2) the date of the dissolution; and
>
> (3) that the company's business has been wound up and the legal existence of the company has been terminated.
>
> (b) The existence of a limited liability company is terminated upon the filing of the articles of termination, or upon a later effective date, if specified in the articles of termination.

(emphasis added).  Section 33-44-207 of the South Carolina Code (2006) provides:

> (a)  A limited liability company or foreign limited liability company *may correct a record filed by the Secretary of State if the record contains a false or erroneous statement or was defectively signed*.
>
> (b)  A record is corrected:
>
> (1) by preparing articles of correction that:

(i) describe the record, including its filing date, or attach a copy of it to the articles of correction;

(ii) specify the incorrect statement and the reason it is incorrect or the manner in which the signing was defective; and

(iii) correct the incorrect statement or defective signing; and

(2) by delivering the corrected record to the Secretary of State for filing.

(c) Articles of correction are effective *retroactively on the effective date of the record they correct except as to persons relying on the uncorrected record and adversely affected by the correction.* As to those persons, articles of correction are effective when filed.

(emphases added).

While the original appeal in this matter was still within the jurisdiction of the appellate courts, Appellants filed a motion to dismiss the case based on articles of termination being filed for PCG in the Secretary of State's Office. Appellants contended the dissolution of the LLC eliminated any justiciable controversy and destroyed the court's subject matter jurisdiction. The master heard the motion in spite of Appellants' default status, noting that subject matter jurisdiction may be raised at any time. On the merits, the master concluded the articles of termination had been filed in error by a party[8] who did not have the authority to do so, the statute governing the reinstatement of an LLC's status was retroactive to the date of the filing of the articles, and that retroactivity was applicable to all parties except a party prejudiced in reliance on the incorrect record. Furthermore, the master noted

---

[8] Joann Eaddy's affidavit indicated she was director of finance for Thompson Construction Group in Delaware. One of its subsidiaries, Palmetto Construction Group, LLC (a Delaware company) wound up its business in 2018 and 2019. She filed articles of termination in Delaware and in South Carolina for tax reasons regarding property the company had sold in South Carolina. She was unaware of the existence of PCG.

no articles of dissolution had been filed, which was a prerequisite to termination of the entity's existence.

No evidence supports finding PCG actually sought termination of its LLC status. The record demonstrates the filing of the articles of termination were a procedural, paperwork mix-up that has been corrected and the error caused no prejudice to Appellants.  Moreover, Appellants do not cite to any authority or fully argue this issue in their brief.  *See* Rule 208(b)(1)(D), SCACR (requiring the argument section of the brief contain discussion and citations of authority).  Rather, they list points they believe the master determined incorrectly and crave reference to previously filed motions and memoranda.  While these documents are included in the record on appeal, an appellant cannot minimize its burden to make cogent, supported arguments in its brief by pointing to other documents, ostensibly circumventing the page limit requirements of Rule 208(b)(5), SCACR.  *See also McCall v. IKON*, 380 S.C. 649, 659-60, 670 S.E.2d 695, 701 (Ct. App. 2008) (noting an appealed order comes to the appellate court with a presumption of correctness, with the burden on appellant to demonstrate reversible error, and the appellate court is obliged to reverse when error is called to its attention, but it is "not in the business of figuring out on its own whether error exists" (quoting *Harris v. Campbell*, 293 S.C. 85, 87. 358 S.E.2d 719, 720 (Ct. App. 1997)).  Consequently, we affirm as to the denial of the motion to dismiss.

### IV.    Motion to Exclude and/or Strike

Appellants contend the master erred in denying their motion to exclude or strike the documents presented during the damages hearing and Peterson's testimony that relied on these documents.  We disagree.

First, we consider the basis for Appellants' motion to the master.  That motion was based on PCG's failure to formally move the documents into evidence at the hearing.  In denying the motion, the master stated this issue was waived based on lack of contemporaneous objection.  In an effort to demonstrate they made a contemporaneous argument, Appellants note in their brief:

> At the beginning of their closing arguments to the [c]ourt, Appellants asked to confirm that their objections went through the entire hearing.  In response, the court indicated "They're on the record" and then qualified that response with "I'm not going to say your objection was to the entire line of testimony, but certainly it was

> expansive. I will grant you that." In response,
> Appellants argued that there was absolutely nothing
> authenticated and that the documents were hearsay.
> Appellants further argued that the testimony was outside
> of the four corners of the Complaint and, therefore, the
> causes of action in the Complaint should be stricken or,
> in the alternative, that no damages should be awarded on
> Respondent's five causes of action.

Appellants' citation to the record supports that it made a contemporaneous objection to the documents based on a lack of authentication and hearsay. However, as to the *timing* of the admission of the documents, the master correctly determined the point was not preserved due to lack of contemporaneous objection. *See State v. Johnson*, 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005) ("To preserve an issue for review there must be a contemporaneous objection that is ruled upon by the trial court. The objection should be addressed to the trial court in a sufficiently specific manner that brings attention to the exact error." (citations omitted)). With respect to authentication or hearsay, Appellants' brief makes no legal argument on that basis, so while such objections may have been preserved by being made at the hearing, such issues are not properly raised to this court on appeal. Therefore, we affirm the denial of the motion to exclude or strike.

## V. Damages

Appellants maintain the master erred in awarding joint and several damages against all appellants in the amount of $2,338,958.64. Specifically, they argue (1) the subcontract between Restoration and PCG was for a sum certain amount that has been paid; (2) the Teaming Agreement did not provide for a 50/50 split of profits; (3) PCG did not sufficiently plead entitlement to legal indemnification under the indemnification agreement or equitable indemnification in the complaint; (4) PCG did not plead prejudgment interest in its complaint; and (5) an award of breach of contract damages against the Wards individually is erroneous because only Restoration was charged in the complaint. After referencing the relevant law, we will address each component of damages in turn.

"The trial judge has considerable discretion regarding the amount of damages, both actual or punitive. Because of this discretion, our review on appeal is limited to the correction of errors of law." *Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 310, 594 S.E.2d 867, 873 (Ct. App. 2004) (citations omitted). "Our task in reviewing a damages award is not to weigh the evidence, but to determine if there

is any evidence to support the damages award." *Id*. at 311, 594 S.E.2d at 873. "A defendant in default admits liability but not the damages as set forth in the prayer for relief. The amount of damages in a default action must be proved by the preponderance of the evidence." *Solley*, 397 S.C. at 203, 723 S.E.2d at 603 (citations omitted). "By defaulting, a defendant forfeits his 'right to answer or otherwise plead to the complaint.' In essence, the defaulting defendant has conceded liability. However, a defaulting defendant does not concede the [a]mount of liability." *Id*. at 203, 723 S.E.2d at 603 (quoting *Howard v. Holiday Inns, Inc.*, 271 S.C. 238, 241-42, 246 S.E.2d 880, 882 (1978)). "At the damages hearing, the defendant may only participate by cross-examining witnesses and objecting to evidence." *Id.* at 203-04, 723 S.E.2d at 603.

> In a default case, the plaintiff must prove by competent evidence the amount of his damages, and such proof must be by a preponderance of the evidence. Although the defendant is in default as to liability, the award of damages must be in keeping not only with the allegations of the complaint and the prayer for relief, but also with the proof that has been submitted.

*Id.* at 204, 723 S.E.2d at 603.

A claim for equitable indemnity may arise when "a first party is liable to pay a second party for a loss or damage the second party incurs to a third party." *Rock Hill Tel. Co. v. Globe Commc'ns, Inc.*, 363 S.C. 385, 389, 611 S.E.2d 235, 237 (2005) (quoting *First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 442, 445 S.E.2d 446, 449 (1994)). "The right to indemnity arises by operation of law 'in cases of imputed fault or where some special relationship exists between the first and second parties.'" *Id.* (quoting *First Gen. Servs. of Charleston, Inc.*, 314 S.C. at 442, 445 S.E.2d at 449). A claim for indemnification "exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join." *Id.* (quoting *Stuck v. Pioneer Logging Mach., Inc.,* 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983)).

First, as to the award of damages for the amount due on the subcontract, we affirm the master. Peterson testified Mark refused to sign change orders to evidence the additional expenditures made by PCG above the subcontract amount near the end of the project. Her spreadsheet outlined the amounts owed. In construction projects, costs are necessarily going to be somewhat fluid and the subcontract

acknowledges the changes could affect the total amount due under the subcontract raising the amount due above the sum certain.[9]  In the absence of evidence these amounts were not correct, the master did not abuse his discretion in awarding the amount sought by PCG.  Likewise, the profit split was established by a preponderance of the evidence based on Peterson's testimony, the evidence of previous payment applications, and a letter from PCG to Restoration suggesting the parties meet to determine the total profit on the project for purposes of effecting a 50/50 split.

The award of indemnity is more problematic.  Even assuming PCG stated a sufficient claim in its complaint to hold Appellants liable for damages related to claims against the surety bond, PCG failed to prove it suffered damages in that amount.[10]  PCG never paid Hanover any amount on the bond.  It is contractually obligated to Hanover for the amount Hanover paid out on its behalf, but no judgment has been secured by Hanover and the statute of limitations to procure one has expired.  While it may be uncomfortable in a moral sense and may have or continue to be financially harmful to PCG to have the obligation outstanding, as a practical matter, PCG cannot establish it was damaged *in the amount of the bond payments*.  The fact that PCG could not secure a bond for a period of time damaged them in that it contributed to the demise of their business.  Those actual damages from Restoration's conduct, lost profits, were found to be too speculative by the master and PCG did not appeal that ruling.  Whatever harm the forfeiture under the bond caused, it would not automatically be equivalent to the amount owed on the bond that neither PCG nor Appellants ever remitted to Hanover.  Consequently, we reverse the award of damages based on the amount of payments outstanding to Hanover under the specific circumstances of this case.

---

[9] The subcontract provided: "ARTICLE 10 SUBCONTRACT SUM § 10.1 The Contractor shall pay the Subcontractor in current funds for performance of the Subcontract the Subcontract Sum of One million eighty-two thousand three hundred forty-two dollars and 10/100, ($1,082,342.10), *subject to additions and deductions* as provided in the Subcontract Documents."  (emphasis added).

[10] The complaint is nonspecific in pleading the elements for any cause of action that would prove liability for indemnification.  The indemnity agreement between the parties indicates each will waive any pursuit of indemnification against the other until the surety is satisfied.  That has not happened.  The factual allegation may establish the bare minimum for pleading an equitable right to indemnification, However, even giving the benefit of the doubt to PCG with regard to its pleadings, it failed to establish it was damaged in the amount of $1,307,978.71.

With regard to prejudgment interest, Appellants maintain PCG was not entitled to such as it did not plead for it in its complaint. We agree.

"This [c]ourt requires parties to plead for prejudgment interest in order for it to be recovered. If no request for pre-judgment interest is made in the pleadings, it cannot be recovered on appeal." *Dixie Bell, Inc. v. Redd*, 376 S.C. 361, 368, 656 S.E.2d 765, 768-69 (Ct. App. 2007) (citations omitted). "An amendment to a complaint is sufficient to place the demand for pre[]judgment interest before the trial judge. The motion to amend, nevertheless, must be clear and specific to include a claim for pre[]judgment interest." *Id.* at 368, 656 S.E.2d at 769 (citations omitted).

PCG correctly points out that prejudgment interest was raised at the damages hearing and Appellants did not point out the lack of pleading to the master.[11] However, PCG also failed to avail itself of the opportunity to amend the pleadings to conform to the evidence. The failure to plead entitlement to prejudgment interest at any point prior to judgment renders PCG's request waived regardless of

---

[11] PCG's suggestion that prejudgment interest was discussed "at length" during the damages hearing is a bit exaggerated, but it was requested at the hearing by PCG as demonstrated by the record.

> PCG: Now, interest, again, the subcontract amount has been certain and solid for a very long time. So rather than go all the way back to the date of that pay application, we said, okay, well, how about from the date of the last damages hearing? And we've got from there and requested damages.
>
> And we're seeking interest on the portion that had been paid as of the last damages hearing, which is 1.18 million and at the current rate of legal interest.
>
> . . . .
>
> THE COURT: Okay. And that was the 620 figure?
>
> PCG: That was. Yes, Judge

Additionally, the notebook presented at the damages hearing contained the request for prejudgment interest.

Appellants' failure to object. *See id*. at 367, 656 S.E.2d at 768 (noting a plaintiff "waived any claim to receive pre[]judgment interest by failing to plead it"); *see also McMillan v. S.C. Dep't of Agric.*, 364 S.C. 60, 74-76, 611 S.E.2d 323, 330-31 (Ct. App. 2005) (holding plaintiffs were not entitled to unpled prejudgment interest in spite of it being brought up at the hearing on the matter and plaintiffs moving to amend the pleadings to conform because such request was "extremely general and not completely clear"), *rev'd on other grounds*, 380 S.C. 212, 670 S.E.2d 368 (2008). Therefore, the master erred in awarding prejudgment interest on any of the damages awarded.

Finally, Appellants argue the master erred in entering judgment against Mark and Lynette individually on the breach of contract damages because that cause of action was only asserted against Restoration and the contracts involved were between Restoration and PCG, not the individual parties. Based on the record, this appears to be correct. PCG's response to this assertion in its brief is generic and unpersuasive. Restoration brought this error to the master's attention in its motion for reconsideration filed March 10, 2022. This was the earliest time the error could have been brought to the master's attention as it was not clear he would make the contractual damages award against *all* defendants until the order was issued. *See State v. Rogers*, 361 S.C. 178, 183, 603 S.E.2d 910, 912-13 (Ct. App. 2004) ("There are four basic requirements to preserving issues at trial for appellate review. The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity." (citing Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 57 (2d ed. 2002))). However, the record demonstrates Appellants neglected to provide this motion for reconsideration to the master as provided for in Rule 59(g), SCRCP. It provides "[a] party filing a written motion under this rule shall provide a copy of the motion to the judge within ten (10) days after the filing of the motion." The master received the motion through PCG's counsel in July of 2022 (along with two other motions for reconsideration) that it summarily denied citing the failure to provide a copy of the motions. The master denied the motions on "substantive and procedural grounds." Appellants make no mention of the procedural grounds in their argument. Consequently, under the two-issue rule, we must affirm the breach of contract damages award against Mark and Lynette individually. *See Graves v. Horry-Georgetown Tech. Coll.*, 391 S.C. 1, 8, 704 S.E.2d 350, 354 (Ct. App. 2010) ("Under the two-issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case." (quoting *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903

(2010), *abrogated on other grounds by Repko v. County. of Georgetown*, 424 S.C. 494, 818 S.E.2d 743 (2018))).

**CONCLUSION**

Based on the foregoing, we affirm the master's order with the exception of the award of damages for the amount due under the surety bond, $1,307,978.71, and the prejudgment interest awards of $83,674.28 and $537,057.15.[12] This results in a revised total judgment of $410,248.50.

**AFFIRMED AS MODIFIED.**

**WILLIAMS, C.J., and TURNER, J., concur.**

---

[12] The prejudgment interest award on the surety bond claim is reversed based on both the reversal of the underlying award of damages and PCG's failure to plead prejudgment interest in the complaint.